CARLSON, RESPONDENT, *v.* NORTHERN PACIFIC RAIL-
WAY CO., APPELLANT.

(No. 6,312.)

(Submitted May 7, 1928.  Decided June 16, 1928.)

[268 Pac. 549.]

*Master   and   Servant—Railways—Personal   Injuries—Release
from   Liability—Contracts—Constitutional   Law—Considera-
tion—Mistake   in   Execution   of   Agreement—Rules   of   Em-
ployer—When   not   Binding   upon   Employee.*

Master and Servant—Personal Injuries—Rule That Where Testimony
of Plaintiff is Inherently Improbable, Verdict in His Favor will
be Set Aside and New Trial Ordered *Held* Inapplicable.
1.  Rule that, where the testimony of plaintiff is so inherently
improbable as to deny it any claim to respect, the supreme court
will set the verdict of the jury in his favor aside and order a
new trial, *held* inapplicable to the facts disclosed in an action by
a section-hand for damages claimed to have been sustained
through the negligence of his fellow employees, while carrying a
rail, in suddenly dropping one end thereof without warning to
plaintiff, the weight of the rail "taking" him "down almost to the
ground" and the rail striking him on the side and down the leg.

Same—Release of Employer from Liability for Injury to Employee—
Agreement to Reinstate Employee Sufficient Consideration for Re-
lease.
2.  *Held,* that an agreement by an employer to reinstate and per-
mit a former employee to continue in his employment after he
claims to have sustained an injury, under the same conditions as
existed prior thereto, is a sufficient consideration to sustain a re-
lease of the employer from liability for damages claimed to have
resulted from the injury, executed by the employee.

Contracts—Nature of Consideration Sufficient to Support—Policy of
Law is not to Interfere With Freedom of Contract.
3.  In the absence of fraud, a valuable consideration, though
small or even nominal, is enough to support an agreement entered
into upon the faith of it, it being the policy of the law not to
weigh the quantum of consideration but refrain from interference
with the freedom of contract and suffer the parties to exercise
their judgment in consummating agreements and determine for
themselves the benefits derived from their bargains.

---

2.  Consideration for release of claims for personal injuries, see
note in 107 Am. St. Rep. 615.  See, also, 23 R. C. L. 380.  Validity of
release given in consideration of re-employment, see notes in 4 Ann.
Cas. 647; Ann. Cas. 1916E, 175.  See, also, 23 R. C. L. 380.
3.  See 6 Cal. Jur. 189; 6 R. C. L. 678.

Master and Servant—Release of Employer from Liability for Injury to Employee—Constitutional Provision Prohibiting Employer from Exacting Release as Condition Precedent to Employment—When Inapplicable.

4. *Held,* that section 16, Article XV of the Constitution, making it unlawful for an employer to require his employee, as a condition of his employment, to execute an agreement releasing the employer from liability on account of personal injuries sustained by the employee while in the service of the employer, has reference only to agreements covering injuries thereafter likely to occur and does not prohibit such a contract for injuries received by the employee prior to its making or his application for reemployment.

Contracts—One Who Fails to Read Contract or to have It Read to Him, if Unable to Read, Before Signing, Guilty of Gross Negligence.

5. One who signs a contract without reading it though able to read, or one, unable to read, who signs without procuring a reliable person to read it for him, is guilty of gross negligence and estopped from avoiding it on the ground that he was ignorant of its contents unless he was by a trick or artifice of the other party to it dissuaded from reading or having it read.

Master and Servant — Personal Injuries — When Release of Employer from Liability Signed by Section Foreman in Behalf of Plaintiff Valid.

6. Where an employee in consideration of being permitted to resume work after an injury sustained by him did not at once sign a paper releasing the employer from liability for the injury but agreed thereafter to sign it and did so several days after returning to work, the fact that he did not sign it before resumption of work did not affect its validity.

Same.

7. A railway sectionman who authorized his foreman to fill in blank spaces on a formal contract releasing his employer from liability for an injury theretofore sustained by him was binding upon him where there was no inconsistency between the printed portion and what was filled in and no part of the printed matter was changed after it had been signed.

Same—Release of Employer by Employee from Liability for Personal Injuries — Mistake of Employee in Signing Agreement — When Claim of Mistake not Available to Avoid Agreement.

8. To avoid a contract of release from liability for personal injuries on the ground of mistake, the mistake must have been of a past or present fact material to the agreement, not one based on belief relative to an uncertain future event; hence where neither the employer, the employee nor the physician examining the latter knew at the time the employee signed a release that his injuries were greater than he supposed at the time he attached his signature, an instruction that the contract had been entered into by mistake was erroneous.

---

5. Failure to read contract as affecting right to assert fraud in respect thereto, see notes in 6 L. R. A. (n. s.) 463; L. R. A. 1917F, 637. See, also, 6 Cal. Jur. 84; 6 R. C. L. 633; 23 R. C. L. 386.
8. See 23 R. C. L. 390.

[82 Mont. 559.]

Same — Personal Injuries — Employee Ignorant of Rule of Railway Company Relative to Execution of Release Prior to Re-employment not Binding upon Him.
9. In the absence of a showing that plaintiff railway employee seeking damages for personal injuries knew of defendant company's rule that, where an employee was injured, a settlement and the execution of a release from liability therefor were required before he was permitted to return to work, plaintiff could not be bound by it and an offer to prove such a rule was properly rejected.

---

[1-3] Appeal and Error, 4 **C. J.**, 848, n. 36, p. 853, n. 60.   Release, 34 **Cyc.**, p. 1052, n. 53.
[4]   Release, 34 **Cyc.**, p. 1075, n. 34.
[5]   Release, 34 **Cyc.**, p. 1056, n. 86.
[6-8] Appeal and Error, 4 **C. J.**, p. 1050, n. 85.   Contracts, 13 **C. J.**, p. 362, n. 36.   Release, 34 **Cyc.**, p. 1058, n. 2, p. 1076, n. 40, p. 1106, n. 30, 37.
[9]   Release, 34 **Cyc.**, p. 1101, n. 6.

*Appeal from District Court, Silver Bow County; Wm. E. Carroll, Judge.*

ACTION by Justus Carlson against the Northern Pacific Railway Company. Judgment for plaintiff and defendant appeals. Reversed and remanded, with direction to grant defendant a new trial.

*Messrs. Walker & Walker* and *Messrs. Gunn, Rasch & Hall,* for Appellant, submitted an original and a reply brief; *Mr. E. M. Hall* argued the cause orally.

*Messrs. Maury, Brown & Maury,* for Respondent, submitted an original and a supplemental brief; *Mr. H. Lowndes Maury* argued the cause orally.

MR. JUSTICE STARK delivered the opinion of the court.

Claiming that he had been injured while in the employ of the defendant as a section-hand, and while engaged in unloading rails from a push-car, through the negligence of fellow-employees, the plaintiff brought this suit to recover damages alleged to have resulted therefrom. At the conclusion of the trial the plaintiff was given judgment. Defendant moved for a new trial which was denied and has appealed from the

judgment. A bill of exceptions embodying the proceedings had at the trial is embraced in the transcript.

At the threshold of the case we are confronted by a motion on the part of the plaintiff to strike the bill of exceptions from the record, on the ground that it was not settled and signed in the manner prescribed by law. This motion has been considered and we deem it without merit, for which reason it is overruled.

The plaintiff testified that on May 24, 1927, with other employees of the defendant, he was engaged in unloading railway rails from a push-car on the defendant's tracks at Montana Street in the city of Butte; that one of the rails unloaded was curved or crooked and in taking it from the car three men had hold of it at one end, while the plaintiff and a man named Steve had hold of the other; that the section foreman or boss stood by the end of the rail which was being held by the three men, watching the action. He said that in unloading rails it was customary when the men handling a rail had reached the place where it was to be deposited, for the foreman or man in charge to give a signal or command so that all men could let go at the same time; that such signal or command was not given in this instance, but that when the men had carried the rail about five feet from the car, Steve let go of the same without any warning and without directions from the foreman in charge; that the weight of the rail took him down almost to the ground and, as it slipped out of his hands, it "struck me on the side and hit me down the leg here. It struck me in here and here." He further testified that he worked the rest of the day but was shaky and his left leg was numb; that he had pain in his back, side, hip and left leg but continued to work until about noon on the twenty-seventh day of May, at which time he obtained an order from the section foreman to go to Dr. Kistler, a physician designated by the defendant, who examined him, gave him some pills and liniment and said, "That will fix you

all right''; that he paid a second visit to Dr. Kistler on May 31 and received some other medicine.

The plaintiff returned to work for the defendant on May 31, or June 1, and, according to his statement, after he had been working about three or four days the section foreman, Swanson, handed him an envelope containing a document, and said, ''Here is a paper to fill out.'' This paper was a form for an employee's report of an accident sustained by him, containing various blank spaces to be filled in, showing the nature, extent and course of injuries he had sustained, and at the bottom, immediately preceding the place for signature, contained the following: ''I do not hold the railway responsible for these injuries, and I hereby agree that in consideration of being allowed to resume my work in the service of the railway I hereby fully release said railway, its successors and assigns, from all claims for damages for said injuries of every kind and description, and declare that all rights and claims arising therefrom or thereby are fully paid and discharged. It is expressly understood that there is no agreement on the part of the railway, or any of its representatives, to continue said employment for any length of time, but I am to be simply reinstated and allowed to work under the same circumstances as before the accident above described.''

There is some controversy as to just when this paper was handed to plaintiff, but as it is admitted that the form was not filled out and signed until June 3, it is apparent from what he said his contention is, that it was on that date. He testified that he then walked over to Swanson's house, asked him to fill out the blank; that Swanson told him to sign it and he would fill in the blank spaces later on; that he then signed his name at the indicated place and the paper was left with Swanson. Plaintiff first testified that he could not read the English language but later qualified the statement by saying he could read small words, but not big ones.

Plaintiff continued to work until July 25, 1927, when he was, at his own request, given an order to go to the Northern

Pacific Hospital at Missoula, where he remained about three or four days for examination and then returned to Butte.

Dr. Dan J. Donohue testified to having made an examination of the plaintiff and that he was of the opinion his injuries were serious and permanent.

The plaintiff's testimony was disputed on every point by witnesses who testified on the part of the defendant. The section foremen and the other section-hands who were working with plaintiff contradicted his account of the dropping of the rail; said no such incident occurred and that plaintiff was not injured at all. Medical testimony on the part of the defendant tended to show that while plaintiff was suffering from some ailments, they could not have been produced by an injury such as he claimed to have received. The section foreman, Swanson, gave his version of the signing of the paper above referred to by the plaintiff, substantially as follows: The plaintiff came back on May 31 and asked if he could go to work and was told that he could; that witness then got the blank form of release, handed it to plaintiff and told him he would have to fill it out, sign it and give it back. "He said 'all right.' He did not fill it out at that time. I next saw the release after that on the third day of June. I saw him at the car house; he was sitting there reading it. * * * He did not sign it then at the car house, but came over to the house and told me, * * * to make it out for him because he never made out any before. He then handed me the release. It was not signed then. I told him to sign it and I would fill it in. He signed it then in my presence. * * * That was on June 3. He started to work at one o'clock on the 31st of May." The witness said there was no money paid to plaintiff when he signed the statement and "I did not threaten to fire him if he didn't sign it, but I couldn't put him to work if he hadn't signed it. He had been at work three days down there with the understanding that he was to sign the release. He had already been working three days down there, but I had handed him the release and told him to fill it in and

sign it and give it back to me. Two days later it had not been signed; he signed it on the 3rd. He worked three days and a half before signing it, and was working at the same wages that he had been before he was injured; was doing exactly the same kind of work as he was the day before he was injured, and was doing his work just as well as I would [want] a man to do.''

At the close of all the testimony the defendant moved the court for a directed verdict in its favor upon grounds which will be noted later. The motion was denied.

In addition to their general verdict in favor of plaintiff, the jury in response to three special interrogatories submitted to them, found that no signal was given to throw the rail before the men handling the same dropped it; that the man who was on the same end of the rail with plaintiff let go before the signal to throw it was given, and that when the rail was dropped or thrown it struck the plaintiff on his side or hip.

Counsel for defendant have earnestly argued that the mo-
[1-3] tion for directed verdict should have been sustained, because there was no substantial evidence to support the allegations of the complaint; that the plaintiff's testimony was so inherently improbable as to deny it any claim to respect, and that under the rule recognized by this court in *Grant* v. *Chicago, M. & St. P. Ry. Co.,* 78 Mont. 97, 252 Pac. 382, and *Casey* v. *Northern Pacific Ry. Co.,* 60 Mont. 56, 198 Pac. 141, and other cases, the verdict should be set aside and a new trial ordered on that ground.

Upon a consideration of all the testimony we are impelled to the conclusion that the rule relied upon by counsel is not applicable to the facts disclosed in the record in the instant case.

It is next insisted that the defendant's motion for a directed verdict, made at the close of all the testimony, should have been sustained, because the evidence showed that the plaintiff had released the defendant from all liability for the injuries received. This contention is based upon the effect of

plaintiff's execution of the release above referred to. Plaintiff admitted that he signed the instrument but sought to avoid its effect by asserting, among other things, that he did so without any consideration and therefore it was not binding upon him.

In the first place, it is to be noted that under the provisions of section 7512, Revised Codes of 1921, "a written instrument is presumptive evidence of a consideration." The plaintiff did resume his service in the employ of the defendant and continued to work until he voluntarily quit, about the twenty-sixth day of the following July. An agreement to reinstate and allow a former employee to continue in his employment after he claims to have sustained an injury, under the came conditions as existed prior thereto, is a sufficient consideration to sustain a release of the employer from liability for damages claimed to have resulted from such injury executed by the employee.

In *Forbs* v. *St. Louis etc. Ry. Co.*, 107 Mo. App. 661, 82 S. W. 562, the plaintiff claimed to have been injured while in the employment of the defendant and in consideration of reemployment executed a release to the defendant for damages growing out of the same, which in effect was the same as the release signed by the plaintiff in this case. In sustaining the validity of this release, the Missouri court said: "A valuable consideration, although small, or even nominal, in absence of fraud, is enough to support the agreement entered into upon the faith of it. (Beach, Contracts, Vol. 1, par. 5.) To quote from the early case of *Marks* v. *Bank*, 8 Mo. 316: 'It is unnecessary that the consideration should be adequate in point of actual value, the law having no means to decide upon this matter. If the least benefit or advantage be received by the promisor from the promisee or a third person, or if the promisee sustain any—the least—injury or detriment, it will constitute a sufficient consideration to render the agreement valid. The reason for such doctrine being that it is the policy of the law not to weigh the quantum of consideration, but,

refraining from interference with the freedom of contract, suffer the parties to freely exercise their judgment and will in consummating agreements and determine for themselves the benefits derived from their bargains.' "

In *Tindall* v. *Northern Pac. Ry. Co.*, 58 Wash. 118, 107 Pac. 1045, an injured employee in consideration of re-employment executed a release which appears, from the portion thereof quoted in the decision, to be the same as the one in the present case, and the consideration therefor was held to be sufficient. The court said that to hold the release not binding upon the plaintiff would in effect destroy his power to contract.

In *Cleveland etc. Ry. Co.* v. *Hilligoss*, 171 Ind. 417, 131 Am. St. Rep. 258, 86 N. E. 485, speaking of a release the consideration of which was re-employment of an injured employee, the court said that he could not be heard "to complain that there was a want of, or an inadequate, consideration. His recoverable damage, if any at all, was unliquidated and uncertain. It might be much or little, and whatever consideration he accepted as satisfaction for what he surrendered will be held as adequate. That he accepted appellant's covenant for re-employment in satisfaction is uncontrovertible from the language of the release, and that was a sufficient consideration."

The only cases which have been called to our attention holding to a contrary rule are found in the decisions of the courts of Texas. Of these, *M. K. & T. Ry. Co.* v. *Smith,* 98 Tex. 47, 107 Am. St. Rep. 607, 4 Ann. Cas. 644, 66 L. R. A. 741, 81 S. W. 22, seems to be the leading one and its doctrine has been followed in later cases in that state.

Section 16 of Article XV of our state Constitution pro-
[4]  vides: "It shall be unlawful for any person, company or corporation to require of its servants or employees, as a condition of their employment or otherwise, any contract or agreement whereby such persons, company or corporation, shall be released or discharged from liability or responsibility on account of personal injuries received by such servants or em-

ployees while in the service of such person, company or corporation, or the agents or employees thereof; and such contracts shall be absolutely null and void"; and section 11402, Revised Codes of 1921, enacted to carry out the constitutional provisions, after reciting the substance thereof, makes a violation of the terms of the section a criminal offense.

It is contended by counsel for the plaintiff that the release in question is invalid under this constitutional provision.

It was formerly held in some states that an employer could by contract relieve himself from liability for such injuries as an employee might subsequently receive while in his employment by reason of the employer's negligence. By a great preponderance of authority in this country such contracts were held to be void as against public policy and in many states they were prohibited by express statutory enactment. (5 Labatt on Master & Servant, sec. 1919.) The foregoing constitutional and statutory provisions make the public policy of this state harmonious with the rule declared by the majority of the courts without waiting for judicial declaration. The provisions do not in purpose and effect differ from the provisions of section 5 of the Act of April 22, 1908, Chapter 149, United States Compiled Statutes, 1916, section 8661, which provides: "Any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act shall to that extent be void." It is uniformly held that this provision only applies to agreements entered into before the accident occurs by which the employee receives his injuries and that it does not prevent a contract for the settlement for injuries theretofore received. (*Lindsay* v. *Acme Cement Plastering Co.*, 220 Mich. 367, 190 N. W. 275; *Ballenger* v. *Southern Ry. Co.*, 106 S. C. 200, 90 S. E. 1019.)

This subject is discussed in 2 Roberts on Federal Liabilities of Carriers, page 1135, section 644, where it is said:

"An employee who has a claim against a common carrier for personal injuries, may agree upon a settlement of his claim and accept a sum of money or other thing of value in settlement of said claim. In the absence of fraud or concealment he is concluded by such a settlement. Such a release is not a contract, regulation or device, the purpose and intent of which is to enable the common carrier to exempt itself from liability under the statute."

If the construction contended for by counsel for plaintiff were adopted, the constitutional section would be held to apply to past as well as to future liability, and would make an employer criminally liable whenever he voluntarily settled the claim of an injured employee with him and took a release discharging himself from responsibility on account of such injuries. Such a construction cannot be maintained.

In view of the provisions of section 7512, supra, and the reasoning employed in the cases from Missouri, Washington and Indiana above referred to, it appears to us that the release signed by plaintiff in this case shows on its face that it was supported by a sufficient consideration and it was binding upon him unless its effect could be avoided upon some ground other than want of consideration.

Plaintiff urges that he could not read the release and did [5] not know its contents before signing it and for that reason should not be bound by it. He does not contend there was any fraud or artifice practiced upon him to secure his signature, or that he was not given opportunity to have the same read and explained to him by some competent and reliable person. His failure to inform himself of the contents of the release under such circumstances will not relieve him from its effects. (*Whitney Co.* v. *Johnson,* 14 Fed. (2d) 24.) In the cited case the court said: "If one can read his contract, his failure to do so is such gross negligence that it will estop him from denying it, unless he has been dissuaded from reading it by some trick or artifice practiced by the opposite party. If he cannot read it, it is as much his duty to procure

some reliable person to read it and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so; and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents." In the recent case of *W. T. Rawleigh Co.* v. *Washburn,* 80 Mont. 308, 260 Pac. 1039, this court said: "It will not do for a man to enter into a contract and when called upon to respond to its obligations to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written."

As shown by the foregoing statement of facts, there was a direct and substantial conflict between the testimony of the [6-8] plaintiff and that of the defendant as to whether the paper containing the form of release was delivered to the plaintiff for his signature before he resumed his employment, or whether it was handed to him a few days thereafter. If it was not handed to him for signature until June 3 or 4, and three or four days after he had resumed his work in the service of the defendant, and he then signed it, and there was no prior agreement on his part that he would sign the same, the signature thereto was without consideration and would not constitute a release of his claim for damages. (*Purdy* v. *R. W. & O. R. R. Co.,* 125 N. Y. 209, 21 Am. St. Rep. 736, 26 N. E. 255; *Potter* v. *Detroit etc. R. R. Co.,* 122 Mich. 179, 81 N. W. 80, 82 N. W. 245.) If, however, when plaintiff resumed his work in the service of the defendant he did so under an agreement that he would sign the release as a consideration for being permitted to do so, the mere fact that it was not signed until a few days later would not affect its validity. (9 Cyc. 361.)

Whether the contention of the plaintiff or that of the defendant was true was for the jury to decide. The court did not err in overruling the motion for a directed verdict.

The defendant requested the court to instruct the jury in effect that even though the release was not signed by plaintiff until three or four days after he was allowed to resume work, that fact would not affect its validity if they found from the evidence that at or before the time he was allowed to resume work he was advised he would have to sign such a release in order to be re-employed and that he would sign such a release when thereafter presented to him and that in compliance with such understanding he did thereafter sign the release. On objection of the plaintiff the court refused to give this instruction. For reasons which are apparent from what is above said in considering the defendant's motion for a directed verdict, the refusal of the court to give this instruction was error. It related to a material point raised by the pleadings and presented in the evidence which was not covered in any other instruction given to the jury, and the refusal of the court to give it was prejudicial to the rights of the defendant.

Over objections of the defendant and at the request of the plaintiff the court instructed the jury to the effect that if plaintiff had proven by a preponderance of the evidence each and every of the following facts: (a) That the release above referred to was executed entirely without consideration; (b) that it was executed without the blanks having been filled in; that plaintiff never authorized Swanson to fill the same in and never knew what Swanson had filled in until after this suit was brought, and that plaintiff committed the same into Swanson's possession in a form so indefinite that it is not possible to collect therefrom the intention of the parties; (c) and that when the release was signed and delivered to Swanson both he and plaintiff believed the latter would be well in a week or two thereafter, and that such belief by the plaintiff was inspired by the physician whom he had consulted, acting in honest or unintentional mistake, and that plaintiff would not have executed the release if he had suspected that he was permanently injured, although in fact he

was so injured; and that plaintiff did not sign the release until three or more days after he had been reinstated in his previous job at the same wages and work that he had received and performed before he quit the service on May 27, without threat to dismiss or not to re-employ him if he did not sign and no promise to re-employ him if he did,—then they must find as jurors that plaintiff did not release the defendant from the cause of action alleged in the complaint.

Paragraph "b" of the foregoing instruction appears to be incomplete. If it was intended thereby to advise the jury that the release would not be binding upon the plaintiff unless he knew what Swanson inserted in the blank spaces, it was erroneous and the objection thereto should have been sustained. It is admitted by both parties that plaintiff authorized Swanson to fill in these blank spaces. There is no inconsistency between the printed portion and what was in fact filled in. The printed portion of the paper was not in any way changed after it had been signed by plaintiff and it contained the agreement of release quoted in the foregoing statement of facts, and this portion of it was binding upon the plaintiff if he signed or agreed to sign it before he resumed his work in the service of the defendant and as a consideration for being permitted to do so. (*J. W. Jenkins Sons Music Co.* v. *Johnson*, 175 Mo. App. 355, 162 S. W. 308.)

The first portion of paragraph "c" of the instruction does not correctly state the law. There was no evidence of misrepresentation or bad faith on the part of either the physician or Swanson in procuring the signature of the plaintiff to the release. It was signed by the plaintiff of his own volition. There was no deception or fraud practiced upon him. Swanson had no knowledge or information of the extent of plaintiff's injuries, except such as the plaintiff himself imparted. If plaintiff's testimony indicating that subsequent to the signature of the release it developed that his injuries were greater than he supposed they were when he signed it, or greater than the doctor anticipated, be accepted as true, it

merely demonstrates that they were both mistaken as to the future, uncertain and unknowable condition.

The foundation for a mistake that will avoid a release "can be laid only by a mistake of a past or present fact material to the agreement. Such an effect cannot be produced by a mistake in prophecy or in opinion or by mistake in belief relative to an uncertain future event." (*C. & N. W. Ry. Co. v. Wilcox,* 116 Fed. 913; *Powell v. Kansas-Mo. Ry. Co.,* 121 Kan. 622, 249 Pac. 675.) What has been said in disposing of the second ground of defendant's motion for a directed verdict sufficiently indicates that the latter portion of paragraph "c" relating to plaintiff's signing of the release is erroneous.

The errors in the instruction above indicated were prejudicial to the rights of the defendant. Moreover, the instruction was in direct conflict with other instructions given by the court, the correctness of which is not questioned on this appeal.

The defendant sought to prove by the witness Swanson that [9] it was the rule and practice of the defendant, when an employee is injured in the course of his employment, to require a settlement for such injury and the execution of a release of liability therefor before he will be permitted to resume his work. The objection of plaintiff to this offered testimony was properly sustained. It was not shown or offered to be shown that plaintiff had any knowledge of such rule or practice, if it existed, and therefore he could not have been bound by it. (*Pascoe v. Nelson,* 52 Mont. 405, 158 Pac. 317.)

The foregoing determinations make it unnecessary to consider the questions raised by other assignments of error.

The judgment is reversed and the cause remanded to the district court, with instruction to grant a new trial thereof.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, MATTHEWS and GALEN concur.