620 P.2d 699

Buel DANIEL and Irene Daniel, husband and wife, Plaintiffs/Appellees, Cross–Appellants,

v.

MAGMA COPPER COMPANY, a Delaware Corporation, Defendant/Appellant, Cross–Appellee.

No. 2 CA–CIV 3492.

Court of Appeals of Arizona, Division 2.

Sept. 26, 1980.

Rehearing Denied Nov. 13, 1980.

Review Denied Dec. 2, 1980.

Miller, Pitt & Feldman, P. C. by Stanley G. Feldman and Nanette M. Warner, Tucson, for plaintiffs/appellees, cross–appellants.

Twitty, Sievwright & Mills by Andrew R. Alex, Phoenix, for defendant/appellant, cross–appellee.

## OPINION

HOWARD, Judge.

This is an appeal from a judgment entered on a jury verdict which awarded the plaintiffs $150,000 for breach of employment contract and unlawful discharge, $26,000 for intentional infliction of emotional distress and $500,000 for punitive damages.

At issue is the liability of an employer who terminates an employment–at–will agreement when that employee persists in threatening to file a lawsuit against the employer for a non–job related injury.

Buel Daniel was hired by Magma Copper Company (Magma) in 1952 as a journeyman mechanic. He worked as an hourly employee in the truck shop until 1971 when he was promoted to truck shop foreman, a salaried position. In 1972, he developed a non–work related health problem and sought medical treatment at the San Manuel Hospital which is owned and operated by Magma primarily for the company's employees and their dependents.[1] After he failed to respond to treatment it was decided that surgery was necessary. On August 30, 1972, the surgery was performed at San Manuel Hospital by Dr. Duncan Campbell, a surgeon practicing in Tucson who had been retained by the hospital's medical director to perform the operation. The medical director, Dr. Hicks, assisted in the operation.

The operations had adverse effects upon Mr. Daniel but he continued working at Magma as a shop foreman. On April 15, 1975, he was relieved of his duties as shop foreman and was made the sewer plant foreman.

In the fall of 1975, Mr. Daniel consulted Dr. Fontenova, an osteopath, who performed surgery on Mr. Daniel in an attempt to correct the problems he continued to have as a result of the first operation. The surgery resulted in only a slight improvement of the condition and Mr. Daniel consulted with an attorney concerning a possible malpractice claim against Magma or the doctors.

Letters were sent by Daniel's lawyer to Magma informing it of Daniel's malpractice claim against the hospital. Magma told Daniel it did not care if he sued the doctors but it did not want him to name the company in the action since it believed that a member of the management group suing the company would adversely affect employee relations. When Daniel restated that he was going to proceed with his claim against Magma, his employment was immediately terminated. At all times pertinent hereto, Mr. Daniel's employment was terminable at will.

In December, 1976, Mr. Daniel and his wife filed an action in the superior court. Count I alleged medical malpractice on the part of Drs. Campbell and Hicks and Magma. Counts II through IV were against Magma only. Count II alleged wrongful discharge; Count III alleged breach of the employment contract; and Count IV alleged intentional infliction of mental distress arising out of the discharge.

The claims in Count I were settled prior to trial. The trial court directed a verdict in favor of Magama on Count III and the remaining counts were submitted to the jury. The Daniels have cross–appealed on the directed verdict on Count III.

Magma contends it is not liable for any damages arising out of the discharge of Mr. Daniel. Mr. Daniel contends that Art. 18,

---

1. Mrs. Daniel was a nurse at the hospital and was still employed by the hospital at the time of trial.

Sec. 3 of the Arizona Constitution gives him a claim for relief for wrongful discharge but, if it does not, he has a claim for breach of contract under Count III.

■ The law is clear in Arizona that either party may terminate an employment–at–will contract at any time for any reason. *Builders' Supply Corp. v. Shipley*, 86 Ariz. 153, 341 P.2d 940 (1959); *Larsen v. Motor Supply Company*, 117 Ariz. 507, 573 P.2d 907 (1977).[2]

As noted in *Larsen*, a growing minority of jurisdictions have created an exception to the traditional employment–at–will rule such that recovery may be had where employment termination contravenes a strong public policy. See, e.g., *Pierce v. Ortho Pharmaceutical Corp.*, 166 N.J.Super. 335, 399 A.2d 1023 (1979); *Harless v. First National Bank in Fairmont*, 246 S.E.2d 270 (W.Va.1978); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978); *Trombetta v. Detroit, Toledo & Ironton R. Co.*, 81 Mich.App. 489, 265 N.W.2d 385 (1978); *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 563 P.2d 54 (1977); *Scroghan v. Kraftco Corp.*, 551 S.W.2d 811 (Kentucky 1977); *Sventko v. Kroger Co.*, 69 Mich.App. 644, 245 N.W.2d 151 (1976); *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975); *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974); *Frampton v. Central Indiana Gas Co.*, 260 Ind. 427, 297 N.E.2d 425 (1973); *Petermann v. International Brotherhood, etc.*, 174 Cal.App.2d 184, 344 P.2d 25 (1959); *O'Sullivan v. Mallon*, 160 N.J.Super. 416, 390 A.2d 149 (1978); cf. *Roberts v. Atlantic Richfield Co.*, 88 Wash.2d 887, 568 P.2d 764 (1977). *Contra, Hinrichs v. Tranquilaire Hospital*, 352 So.2d 1130 (Ala.1977). See also, Blades, "Employment at Will vs. Individual Freedom: On Unlimiting the Abusive Exercise of Employer Power", 67 Colum.L.Rev. 1404 (1967); Note, "A Remedy for the Discharge of Professional Employees Who Refuse to Perform Unethical or Illegal Acts: A Proposal in Aid of Professional Ethics", 28 Vand.L.Rev. 805 (1975). See also, Annot. 62 A.L.R.3d, supra, and Annot. 63 A.L.R.3d 979 et seq.

Expanding this narrow exception, the New Hampshire Supreme Court has held that termination of an employment–at–will contract which is motivated by bad faith or malice or based on retaliation is not in the best interest of the economic system or the public good and constitutes a breach of the employment contract. *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974).

In *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (1977), the plaintiff, a salesman for NCR, alleged that he was fired in order to prevent him from receiving commissions and bonuses on sales that he had made. The Massachusetts court citing *Monge v. Beebe Rubber Co.*, supra, held that every employment contract contains an implied covenant of good faith and fair dealing and that termination could not be used to avoid paying commissions to the plaintiff even though he was an employee at will. At least two courts have refused to follow *Monge v. Beebe Rubber Co.*, supra. See, *Jones v. Keogh*, 409 A.2d 581 (Vt.1979); *Martin v. Platt*, 386 N.E.2d 1026 (Ind.1979).

The Daniels' cause of action for wrongful discharge is based on the public policy exception to the general rule. They rely on Art. 18, Sec. 3 of the Arizona Constitution which states:

"It shall be unlawful for any person, company, association, or corporation to require of its servants or employees as a condition of their employment, or otherwise, any contract or agreement whereby such person, company, association, or corporation shall be released or discharged from liability or responsibility on account of personal injuries which may be received by such servants or employees while in the service or employment of such person, company, association, or corporation, by reason of the negligence of such person, company, association, corporation, or the agents or employees thereof; and any such contract or agreement if made, shall be null and void."

2. See also cases cited in Annot. 62 A.L.R.3d 271–273.

Assuming arguendo that Arizona would follow the public policy exception, we do not find this doctrine applicable to the instant case because the constitutional provision relied upon relates only to work–related injuries.

As observed by G. M. Bakken in his article, "The Arizona Constitutional Convention of 1910", Arizona State Law Journal 1978, 1 at 13–14:

"One of labor's most fundamental grievances in Arizona and throughout the United States was the increasingly obvious inadequacy of common–law tort remedies for dealing with industrial accidents. Common–law defenses to employer liability, such as the fellow–servant doctrine and assumption of risk, exculpated employers from almost all liability arising out of worker injuries. Consequently, a large portion of the cost of industrialization was borne by the labor force in the form of industrial accidents. The progressives viewed their election as a call to place this burden on the employer. . . ."

The intent and purpose of Sections 3 through 8 of Art. 18 of our constitution and of all the legislation adopted thereunder was to retreat from the traditional common–law action of negligence and its rules concerning respondeat superior and to substitute a doctrine in which the industry bears the burden of human as well as material, wastage. Thus, Art. 18, Sec. 3 must be read hand in hand with Art. 18, Sec. 7 (employer's liability law) and Sec. 8 (workmen's compensation law) to effectuate the purpose of the legislation. Art. 18, Sec. 3 was enacted as a means of preventing frustration of the employer's liability law and the workmen's compensation law. It was formerly held in some states that an employer could by contract prospectively relieve himself from liability for injuries

caused by the employer's negligence that an employee might receive while in his employment. See *Carlson v. Northern Pacific Railway Co.*, 82 Mont. 559, 268 P. 549 (1928). In discussing a constitutional provision similar to our Art. 18, Sec. 3, the Montana Supreme Court in *Carlson* stated that the great weight of authority in this country prohibits as void and against public policy contracts whereby the employer seeks to relieve himself from liability in advance for work–related injuries and in many states are prohibited by express statutory enactment. The court further opined that its constitutional provisions make the state's public policy harmonious with the majority rule without waiting for judicial declaration. It also observed that the provisions of its constitution do not differ in purpose and effect from Sec. 55 of the Federal Employers' Liability Act. This is significant due to the fact that Sec. 55 specifically applies only to attempts to create exemptions from liability created by the Act, which means job–related injuries.[3]

We believe the Montana court was correct and also believe that the provisions of Art. 18, Sec. 3 do not differ in purpose or effect from Sec. 55 of the Federal Employers' Liability Act.

In *Chicago B & Q Railroad Company v. McGuire*, 219 U.S. 549, 31 S.Ct. 259, 55 L.Ed. 328 (1910), the Supreme Court upheld the validity of Sec. 207 of the Code of Iowa which eliminated the fellow–servant rule and established liability for damages for negligence as well as that ". . . no contract which restricts such liability shall be legal or binding." The Court stated:

"In the cases within its purview it extended the liability of the common law by abolishing the fellow–servant rule. Having authority to establish this regulation, it is manifest that the legislature was also entitled to insure its efficacy by pro-

---

**3.** The Federal Employers' Liability Act (FELA), 45 U.S.C. Sec. 51 et seq., provides in Sec. 55 that "(a)ny contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: . . ." In

*Bay v. Western Pacific Railway Co.*, 595 F.2d 514 (9th Cir. 1979), the court held that Sec. 55 did not create a private cause of action for wrongful discharge but was only intended to bar a defense in the suit for damages for injuries under the FELA based upon an employee's relinquishment of rights under FELA.

hibiting contracts in derogation of its provisions...." 31 S.Ct. at 264.

 Art. 18, Sec. 3 applies only to "... personal injuries which may be received ... while in the service of employment of such person, company, association, or corporation, ..." Since its purpose is to prevent frustration of the employer's liability law and workmen's compensation law, it applies only to job–related injuries. Mr. Daniel's injury was not job–related and thus, there can be no cause of action for wrongful discharge based upon this provision of the Arizona Constitution.

 We are unable to agree with appellees' contention in their "cross–appeal"[4] that the trial court erred in refusing to submit Count III to the jury. In *Monge v. Beebe Rubber Co.*, supra, the court held that a termination by the employer of a contract of employment–at–will which was motivated by bad faith or malice or based on retaliation is not in the best interests of the economic system or the public good and constitutes a breach of the employment contract. We refuse to follow *Monge*. The effect of adhering to such a rule would be to expose an employer to a lawsuit every time he discharges an employee with a contract terminable at will. Under the *Monge* rule, such a contract is transformed into a hybrid contract under which the employee cannot be discharged unless his work is unsatisfactory or his services are no longer needed. The *Monge* court resolved the issue by rewriting the employment contract so that an employee cannot be fired except for cause. In that way, the *Monge* decision is a substitute for a union collective bargaining agreement.

 We conclude that Magma was neither liable in tort nor in contract for discharging Mr. Daniel. Since his termination was lawful, any recovery for intentional infliction of mental distress based upon the wrongful discharge must also fail.

4. Since appellees prevailed in the trial court, they cannot "cross–appeal". We therefore

The judgment is reversed and the case remanded with directions to enter judgment in favor of Magma Copper Company.

HATHAWAY, C. J., and RICHMOND, J., concur.

treat the "cross–appeal" as a cross–issue.