585 P.2d 266

**McDANIEL & ASSOCIATES, an Arizona Corporation, Appellant,**

v.

**MERODIAS CONSTRUCTION COMPANY, INC., an Arizona Corporation, Appellee.**

**No. 2 CA–CIV 2815.**

Court of Appeals of Arizona, Division 2.

Sept. 25, 1978.

Holesapple, Conner, Jones & Johnson by William W. Edwards, Tucson, for appellant.

Goldbaum & Goetz, P.C. by Richard H. Goetz, Tucson, for appellee.

## OPINION

HATHAWAY, Judge.

McDaniel & Associates, plaintiff-appellant broker, brought an action against Merodias Construction, Inc., defendant-appellee builder, for breach of an exclusive listing agreement for the sale of real property. The broker alleged that the builder had failed to pay certain commissions due under the agreement. The controversy was submitted to the court upon an agreed statement of facts pursuant to Rule 52(c), Rules of Civil Procedure, 16 A.R.S. This is an appeal by the broker from the denial of its motion and the granting of the builder's cross-motion for summary judgment.

Provisions of the listing agreement, pertinent to this appeal, are as follows:

"In consideration of your acceptance of this listing and your agreement and promise to endeavor sales or exchanges of the properties, we, as owners give you the sole and exclusive right to sell or exchange the hereinafter named properties . . . Lots 1 thru 52 of Las Casitas Del Pueblo, Pima County, Arizona.

\* \* \* \* \* \*

This contract shall become in effect as of the date of subdivision approval by the Arizona State Real Estate Department and shall remain in full force for ninety (90) days thereafter, but in any case the expiration date, without extension by mutual consent, shall be no later that [sic] September 30, 1973.

\* \* \* \* \* \*

This exclusive right to sell shall be extended by mutual consent for additional thirty (30) day periods as long as the broker or its assigns maintain average sales of three townhouses per each thirty (30) day period this exclusive right to sell has been in effect. We reserve the right to terminate this exclusive right to sell if the average of three townhouses per month are not sold after the initial ninety (90) day period or after any additional thirty (30) day period the average sales drop below three sales per thirty (30) day period."

The listing agreement, executed on June 4, 1973, became effective on August 23, 1973, when the subdivision was approved and was extended beyond September 30, 1973, by mutual consent of the parties. Sales continued through October 22, 1974, when appellee notified appellant that it considered the agreement terminated and that no further commissions would be paid. Appellant submitted an invoice to appellee for unpaid commissions on ten units not sold but which had been leased or were in the process of being leased by appellee. Appellee refused to pay the commissions on the basis that appellant had not been meeting its sales quota.

Appellee's position was that under the terms of the exclusive listing agreement

those sales which occurred during the first ninety days following August 23, 1973, were not to be included in the computation of the sales quota, while appellant maintained that all sales, including those made during the first ninety days, were to be so included. The parties agreed that appellant had met its required quota and would be entitled to payment of the commissions if the sales which occurred within the first ninety days following August 23, 1973, were to be included in computing average sales. In denying the broker's motion and granting the builder's cross-motion for summary judgment, the trial judge apparently concluded, since this was the only issue before the court, that sales made by the broker during the first ninety days of the exclusive listing agreement were not to be included in computing "average sales". To reach that conclusion, the court must have found either that the agreement was unambiguous and could only be interpreted to exclude sales made within the first ninety days or that the agreement was ambiguous and susceptible of two constructions but that this interpretation was in accord with the intention of the parties.

We are not bound by the trial court's conclusions of law. The interpretation of an instrument is a question of law to be determined by this court independently. *Polk v. Koerner*, 111 Ariz. 493, 533 P.2d 660 (1975); *Hofmann Company v. Meisner*, 17 Ariz.App. 263, 497 P.2d 83 (1972). First we must pass upon whether the language of the listing agreement is ambiguous. Language is ambiguous when it can reasonably be construed in more than one sense and its meaning cannot be determined within the four corners of the instrument. *Ranger Insurance Company v. Lamppa*, 115 Ariz. 124, 563 P.2d 923 (App.1977); *University Realty & Development Company v. Omid-Gaf, Inc.*, 19 Ariz.App. 488, 508 P.2d 747 (1973).

We agree with the broker that the agreement is clear and unambiguous and can only be interpreted to include sales made during the first ninety days of the agreement in computing the sales quota.

We find support for appellant's interpretation in this sentence: "This exclusive right to sell shall be extended by mutual consent for additional thirty (30) day periods as long as the broker or its assigns maintain *average sales of three townhouses per each thirty (30) day period this exclusive right to sell has been in effect*." (Emphasis ours) The exclusive right to sell "has been in effect" since the date of subdivision approval, August 23, 1973. Extensions shall be available if, from this date, "average sales of three townhouses per each thirty (30) day period" are maintained. This sentence makes clear that in computing "average sales" each and every one of the forty-two townhouses sold by the broker since August 23, 1973, are to be included.

The following sentence also supports appellant's interpretation: "We reserve the right to terminate this exclusive right to sell if *the average of three townhouses per month are not sold after the initial ninety (90) day period or after any additional thirty (30) day period* the average sales drop below three sales per thirty (30) day period." (Emphasis ours)

The second sentence of the paragraph is in harmony with the first in beginning the sales quota averaging from the date of inception of the exclusive listing agreement. The second sentence focuses on the builder's right to extend. Both read together afford a common base for establishing a minimum sales quota from which either right may be exercised. The second sentence establishes the right to terminate after each period when the average sales for the overall period are determinable to date.

The first right to terminate arises "after the initial ninety (90) day period" if the quota is not met. The word "after" in this context can sensibly only be given retroactive application, rather than prospective applicable as appellee urges. In interpreting this language to mean that the broker would only retain the right to sell on an exclusive basis if he were able to meet the sales quota of three townhouses per month from the time the initial ninety day period ends, appellee ignores the plain meaning of

the preceding sentence. Furthermore, appellee's interpretation would render redundant the remaining portion of the sentence "or after any additional thirty (30) day period."

The right to terminate is reexamined after each additional thirty day period and materializes whenever "the average sales drop below three sales per thirty (30) day period" computed as indicated in the first sentence of the paragraph from the time the "exclusive right to sell has been in effect." Any other construction would deprive the parties of a logical method of ascertaining the number of "average sales" made at the end of the fourth month or thirty day period. Unless sales made during the first ninety days are included in computing the average monthly sales, there would be no reasonable method for determining whether the agreement should be extended into the fifth month or thirty day period.

Reading the provisions of the agreement from its four corners in order to ascertain the intention of the parties, *Limberopoulos v. Tom Fannin and Associates*, 17 Ariz.App. 35, 495 P.2d 475 (1972); *Goodman v. Newzona Investment Co.*, 101 Ariz. 470, 421 P.2d 318 (1967), it is our opinion that the provisions are unambiguous. The first and second sentences when read together establish that sales made within the initial ninety day period are included in computing "average sales" for extensions and for terminations. Since we find that the agreement unambiguously includes the initial ninety-day period for computing "average sales", the judgment in favor of the builder is reversed and it is ordered that judgment be entered in favor of the appellant.

RICHMOND, C. J., and WREN, J., concur.