688 P.2d 170

**Joan LEIKVOLD, Plaintiff-Appellant,**

v.

**VALLEY VIEW COMMUNITY HOSPITAL, an Arizona corporation; Phoenix Baptist Medical Services, an Arizona corporation and Andrew Allen, Defendants-Appellees.**

**No. 17121–PR.**

Supreme Court of Arizona,
In Banc.

April 25, 1984.

Farrer & Becker by Mathis Becker, Sun City, for plaintiff-appellant.

Jones, Skelton & Hochuli by Don C. Stevens II, William R. Jones, Jr., Phoenix, for defendants-appellees.

Jennings, Strouss & Salmon by Charles E. Jones, Roxana C. Bacon, Phoenix, for amici curiae Continental Bank, First Federal Sav. & Loan Assoc., St. Joseph's Hosp. & Medical Center, and Salt River Project Agr. Improvement & Power Dist.

Snell & Wilmer by Robert J. Deeny, Richard K. Mahrle, Thomas J. Kennedy, Phoenix, for amici curiae Ariz. Employers' Council, Ariz. Public Service Co., Babbitt Bros. Trading Co., Marathon Steel Co., Samaritan Health Services, and Valley Nat. Bank.

Ward & Keenan by A.D. Ward, Gerald Barrett, Janet Smith Hepner, Phoenix, for amicus curiae Ariz. State AFL–CIO.

GORDON, Vice Chief Justice.

Joan Leikvold was hired by Valley View Community Hospital as its Operating Room Supervisor in 1972. In 1978 she became the Director of Nursing. On October 1, 1979 she requested a transfer to her former position in the operating room. This written request was made to Carl Nusbaum, then the Director of Valley View. Because of a change in ownership of Valley View in mid-October, 1979, Andrew Allen became the Chief Executive there. He met with Leikvold shortly after his arrival and indicated that he was aware of her transfer request and that he would act on it shortly thereafter. At a subsequent meeting, Allen expressed his opinion that it was inadvisable for someone who had been in a managerial position to take a position subordinate to his or her earlier one. Despite her eventual withdrawal of the transfer request, Leikvold was fired by Allen on November 14, 1979. Leikvold's personnel record shows "insubordination" as the reason for her discharge. However, Allen testified at his deposition that she was terminated because of her requested transfer to a subordinate position that was not actually open. She was paid for her hours worked and for her accrued vacation and holiday time and received three weeks severance pay. She requested a "grievance hearing" as provided for in the Valley View Community Hospital Administrative and Personnel Policies Manual (hereinafter "policies manual") but that was denied.

Leikvold filed suit in January, 1980 against Valley View, Valley View's corporate owner, and Allen alleging breach of contract and defamation. All the defendants moved for summary judgment arguing that the employment relationship between Valley View and Leikvold was terminable at will and that no defamatory statements about Leikvold had been made. Judgment was entered against Leikvold. She appealed on the breach of contract claim only. The Court of Appeals reversed the entry of summary judgment and remanded for further proceedings, *Leikvold v. Valley View Community Hospital*, 141 Ariz. 575, 688 P.2d 201 (App.1983). The defendants petitioned this Court to review the opinion of the Court of Appeals. The opinion of the Court of Appeals is vacated. The trial court's entry of summary judgment is reversed.[1]

---

**1.** We emphasize that the claim before us is only one for breach of contract, not one in tort. We expressly reserve comment on wrongful discharge or wrongful demotion tort claims founded on the various exceptions to the employment-at-will doctrine that the courts of other states have adopted. At least three exceptions have been recognized. One is the imposition of liability on an employer who discharges an employee for a purpose which contravenes public policy, *see, e.g., Petermann v. International Brotherhood of Teamsters*, 174 Cal.App.2d 184, 344 P.2d 25 (1959) (discharge for refusal to commit perjury); *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978) (discharge for filing workman's compensation claim); *Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978) (discharge for

■ The issue in this case is whether representations in a personnel manual might ever constrain an employer's power to terminate an employment relationship which would otherwise be terminable at will. The courts of several states have confronted this issue. Many have held that such representations do not modify an employment-at-will relationship. *See, e.g., Heideck v. Kent General Hospital, Inc.,* 446 A.2d 1095 (Del.1982); *Shaw v. S.S. Kresge Co.,* 167 Ind.App. 1, 328 N.E.2d 775 (1975); *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 551 P.2d 779 (1976); *Gates v. Life of Montana Insurance Co.,* 196 Mont. 178, 638 P.2d 1063 (1982); *Mau v. Omaha National Bank,* 207 Neb. 308, 299 N.W.2d 147 (1980); *Williams v. Biscuitville, Inc.,* 40 N.C.App. 405, 253 S.E.2d 18 (1979). Others recognize that the employment contract can incorporate the terms of a personnel manual. *See, e.g., Novosel v. Nationwide Insurance Co.,* 721 F.2d 894 (3d Cir.1983) (applying Pennsylvania law); *Walker v. Northern San Diego County Hospital District,* 135 Cal.App.3d 896, 185 Cal.Rptr. 617 (1982); *Carter v. Kaskaskia Community Action Agency,* 24 Ill.App.3d 1056, 322 N.E.2d 574 (1974); *Shah v. American Synthetic Rubber Corp.,* 655 S.W.2d 489 (Ky.1983); *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980); *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983); *Hinkeldey v. Cities Service Oil Co.,* 470 S.W.2d 494 (Mo. 1971); *Southwest Gas Corp. v. Ahmad,* Nev., 668 P.2d 261 (1983); *Weiner v. McGraw-Hill, Inc.,* 57 N.Y.2d 458, 443 N.E.2d 441, 457 N.Y.S.2d 193 (1982); *Yartzoff v. Democrat-Herald Publishing Co., Inc.,* 281 Or. 651, 576 P.2d 356 (1978); *Hamby v. Genesco, Inc.,* 627 S.W.2d 373 (Tenn.App.1982). We hold that an employer's representations in a personnel manual can become terms of the employment contract and can limit an employer's ability to discharge his or her employees.

■ In the case before us, all the parties agree that the general rule is that an employment contract of indefinite duration is terminable at will and that either party may terminate the contract at any time for any reason or for no reason at all. *See, e.g., Daniel v. Magma Copper Co.,* 127 Ariz. 320, 620 P.2d 699 (App.1980). It is also uncontroverted that there was no contract between Leikvold and Valley View for Leikvold to be employed for a certain length of time. Therefore, Valley View concludes, because the contract was for an indefinite duration, it was terminable at will. Such a conclusion misapplies the "general rule" as a substantive limitation on contract formation rather than a mere rule of construction. *See* Restatement (Second) of Agency § 442 (1971) (inference that employment is terminable at will may be rebutted by specific terms of the agreement); *see also Toussaint, supra,* 408 Mich. at 597, 292 N.W.2d at 884 (the general rule "is not a substantive limitation on the enforceabilty of employment contracts but merely a rule of 'construction' "); *Pine River State Bank, supra,* at 628 (the general rule "is only a rule of contract construction"); *Weiner, supra,* 57 N.Y.2d at 466, 443 N.E.2d at 446, 457 N.Y.S.2d at 198 (the general rule has "no greater status than that of a rebuttable presumption"). The seminal Arizona case enunciating the at-will rule was *Dover Copper Mining Co. v. Doenges,* 40 Ariz. 349, 12 P.2d 288 (1932). There, this Court held that the "general rule in regard to contracts for personal services * * * where no time limit is provided, is that they are terminable at pleasure by either party * * *." *Id.* at 357, 12 P.2d at 292. We then quoted from *Echols v. New Orleans, Jackson & Great Northern Railroad Co.,* 52 Miss. 610, 614 (1876), that "[a]n agreement to furnish a * * * service * * * *will be construed* either as

---

agreeing to jury duty). The second is liability for breach, after a long-term period of employment, of the implied-in-law covenant of good faith and fair dealing contained in all contracts, *see, e.g., Cleary v. American Airlines, Inc.,* 111 Cal.App.3d 443, 168 Cal.Rptr. 722 (1980). The third is liability where discharge was motivated by bad faith, malice, or retaliation, *see, e.g., Monge v. Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549 (1974).

terminable at pleasure, or as implying that the thing to be done shall be performed within a reasonable time * * * " (emphasis added). The general rule is at best a rule of construction. It is not a limit on the parties' freedom to contract. We agree with the Minnesota Supreme Court that "[i]f the parties choose to provide in their employment contract of indefinite duration for provisions of job security, they should be able to do so." *Pine River State Bank, supra,* at 628.

When Leikvold was hired in 1972, nothing was discussed regarding job security. As noted above, she did not have a contract for a specific duration. Nor was she specifically told that Valley View would not discharge her except for cause. She was, however, provided with the policies manual and told that the policies therein were to be followed in employee relationships with the hospital. When she became Director of Nursing, she was told that the policies manual was to be explicitly followed whenever an employee was to be terminated. The policies manual is a twenty-two page book that contains welcoming comments to new employees and sections on hospital service, wages and salaries, holidays and sick time, insured benefits, working hours, proper attire, opportunities at Valley View, the complaint and grievance procedure, the termination procedure, and "general rules" regarding punctuality, smoking, soliciting, and safety. In the introduction, Valley View states that the policies manual was "prepared to enable [the employee] to become acquainted with [Valley View's] organization and to verify matters of interest to [the employee's] welfare quickly and reliably."

Leikvold contends generally that personnel manuals can become part of employment contracts and specifically that Valley View's policies manual did become part of her employment contract. Therefore, her argument continues, she could be discharged only for the reasons and only in conformance with the procedures set forth in the policies manual. The relevant termination policies are as follows:

*"Dismissal*

"Every effort is made to help an employee to adjust himself to his work. If the employee's work, however, should be considered unsatisfactory during the first three months of employment, the hospital reserves the right to discontinue his services without notice. If an employee is discharged for unsatisfactory service after the three month probationary period is completed, two weeks notice of such discharge will be given. Gross violations of conduct and hospital rules are grounds for immediate dismissal and will cause an employee to forfeit the usual two weeks notice. On such occasion, the employee will be paid in full only to the time of discharge. No notice or terminal pay is given for the following:

"1. Frequent tardiness.
"2. Sleeping on the job.
"3. Insubordination.
"4. Intoxication.
"5. Malicious gossip.
"6. Excessive garnishments.
"7. Conviction of a felony.
"8. Gambling on hospital premises.
"9. Unexcused absences.
"10. Soliciting tips or other serious misconduct.

"The discharged employee who feels himself aggrieved by the terms of the discharge may appeal to Administration, and will be granted a hearing."

Leikvold reads this section to limit Valley View's right to discharge a non-probationary employee to those cases where the employee's work has been unsatisfactory or where the employee has committed a gross violation of conduct or hospital rules and to guarantee a hearing to appeal an employee's dismissal.

Valley View contends that the policies manual is nothing more than a unilateral expression of policy by which an employee can "guide his conduct and better understand the hospital's expectation of performance." However, if the policies manual is part of the employment contract, Valley View insists that it complied with all the

necessary provisions. First, it claims that the policies manual section set forth above does not imply that an employee can be terminated only for unsatisfactory service or for one of the ten listed gross violations. Second, it claims that the policies manual does not provide for an appeal from a termination by the chief executive.

We agree with Leikvold that personnel manuals can become part of employment contracts. Whether any particular personnel manual modifies any particular employment-at-will relationship and becomes part of the particular employment contract is a question of fact. Evidence relevant to this factual decision includes the language used in the personnel manual as well as the employer's course of conduct and oral representations regarding it. We do not mean to imply that all personnel manuals will become part of employment contracts. Employers are certainly free to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract and that their jobs are terminable at the will of the employer with or without reason. Such actions, either not issuing a personnel manual or issuing one with clear language of limitation, instill no reasonable expectations of job security and do not give employees any reason to rely on representations in the manual. However, if an employer does choose to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it. Having announced a policy, the employer may not treat it as illusory.

As noted above, the trial court entered summary judgment against Leikvold in this matter. Summary judgment is inappropriate where a genuine dispute exists as to material facts. *Washington National Trust Co. v. W.M. Dary Co.*, 116 Ariz. 171, 568 P.2d 1069 (1977). Because a

material question—whether the policies manual was incorporated into and became part of the terms of the employment contract—remains in dispute, summary judgment is improper here.

The resolution of this material question will not necessarily conclude this case. If the jury determines that the policies manual was not part of the contract between Leikvold and Valley View, then Leikvold was an at-will employee, her discharge was proper, and the defendants herein should have judgment in their favor. However, if the jury determines that the policies manual did form part of the terms of the employment contract, the next issue is to ascertain precisely what the terms of that employment contract were. Where the terms of an agreement are clear and unambiguous, the construction of the contract is a question of law for the court. *Smith v. Melson, Inc.*, 135 Ariz. 119, 659 P.2d 1264 (1983). However, if the court determines that the terms of the contract can be reasonably construed in more than one manner, the language is ambiguous, *McDaniel & Associates v. Merodias Construction Co., Inc.*, 120 Ariz. 246, 585 P.2d 266 (App.1978), and extrinsic evidence may be used to ascertain the real meaning of the terms, *Associated Students of the University of Arizona v. Arizona Board of Regents*, 120 Ariz. 100, 584 P.2d 564 (App. 1978), *cert. denied*, 440 U.S. 913, 99 S.Ct. 1226, 59 L.Ed.2d 462 (1979). Only after the contract is so construed can the jury then determine whether it was breached.[2]

Having found the entry of summary judgment to be error, we reverse that entry and remand to the trial court for further proceedings.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

---

2. The dissenting judge in the Court of Appeals apparently reached this final factual determination and, having decided it adverse to Leikvold,

would have affirmed the summary judgment. We do not reach this question and do not express any view as to the merits of this case.