721 P.2d 1159

**Claude DUKE, Plaintiff/Appellee,**

v.

**ARIZONA BOARD of REGENTS, Defendant/Appellant.**

**No. 2 CA–CIV 5520.**

Court of Appeals of Arizona, Division 2, Department A.

Feb. 13, 1986.

Review Denied June 10, 1986.

Glicksman & Awerkamp, P.C. by Elliott Glicksman, Tucson, for plaintiff/appellee.

Andrew M. Ives, Jr., Tucson, for defendant/appellant.

## OPINION

HOWARD, Presiding Judge.

The determinative issue in this case is whether the plaintiff, a classified staff employee of the University of Arizona, had a contractual right to reclassification to a higher pay grade. We find that he did not and reverse with directions.

Plaintiff started work at the University of Arizona in 1968 as a general repairman. After two to three years, his work was principally that of inspecting fire extinguishers. In 1972 the University adopted the "Maintenance Mechanic I Classification, Pay Grade 9," to which plaintiff was assigned effective July 1, 1973. In 1979 plaintiff's position was reclassified as that of a "Maintenance Mechanic II, Pay Grade 12," effective January 20, 1979.

In 1979 the University of Arizona created the "Plan Maintenance Department," dividing the campus into five geographic areas, each area being the responsibility of a "Plan Maintenance Team Leader." A sixth team was responsible for Plan Maintenance

coordination and scheduling, the elevator shop campus-wide and fire extinguisher maintenance campus-wide. The six Plan Maintenance Team Leader positions, one for each of the five geographical areas plus the sixth team, required skilled individuals with journeyman-based craft skills since the areas of responsibility involved multiple crafts. One difference between a Plan Maintenance Team Leader and a Maintenance Mechanic II is that the foreman spends about 80 percent of his time in a supervisory capacity, whereas the latter spends no more than 20 percent of his time in a supervisory capacity. Additionally, fire extinguisher maintenance has been a semi-skilled position as was that of Maintenance Mechanic II.

Throughout this period, plaintiff's prime function has been to operate the university's fire extinguisher department and to act as chief maintenance man for fire extinguishers at the university. The plaintiff has not had overall responsibility for the university's fire safety systems; his responsibilities have been limited to fire extinguisher maintenance.

In May 1984, on the basis of a system-wide audit, the Arizona Universities Personnel System (AUPS) established a new classification with a corresponding job description entitled Service Maintenance Worker which superseded the existing Maintenance Mechanic classification. This would have had the effect of reclassifying plaintiff's position as that of a Service Maintenance Worker II, Pay Grade 14, effective January 1, 1985. At the same time, however, a separate AUPS study created new classifications for all three universities, and plaintiff's position was designated as a Fire Systems Technician II, Pay Grade 16, effective January 1, 1985. Neither the position presently filled by the plaintiff nor that previously filled by him calls for a supervisor as that term is used in the AUPS. Since 1977 the plaintiff has on five occasions invoked the reclassification process resulting in five independent audits of his position. In each of those staff revision reviews for reclassification, the personnel department found that the duties performed by the plaintiff were appropriately classified.

The plaintiff has maintained throughout his reviews that his position should have been classified as a supervisory position or, more specifically, that his duties should have been classified as those of a Plan Maintenance Team Leader, Pay Grade 19. Even assuming arguendo that the evidence showed that the plaintiff had the same job duties as a Plan Maintenance Team Leader, he still has no claim for breach of contract.

In Laws 1976, Ch. 60, § 1, the legislature directed the Arizona Board of Regents to submit a plan to establish a system of equivalent wages and salaries for all employees and supervisory personnel, other than presidents, vice-presidents, deans, professors, instructors, lecturers, fellows, and other officers, at all universities. The statute provided:

"The plan shall include the establishment of uniform job and position classifications, equivalent salary and wage scales within such classifications, and uniform job and position descriptions. The report shall include a description of existing job and position classifications, wage and salaries established, and existing job and position descriptions on a comparative basis for all universities...."

By January 1980 the board of regents had completed a comprehensive plan which was approved by the legislature. The plan was called the Arizona Universities Compensation Plan (AUCP). In the 1980 Staff Manual of the University of Arizona, the university set forth its policy concerning compensation and classification pursuant to the AUCP. The purpose of the plan is found in § 11.02 of the staff manual which states, "[t]he purpose of this plan is to maintain common job descriptions, a common rate structure (pay grade ranges), and a common job evaluation system for the three State universities." Section 11.01 of the manual states:

"The University of Arizona maintains a policy of compensating its staff employees equitably on the basis of individual

performance, local prevailing rates, and applicable State and Federal laws."

Section 11.04 of the manual states:

"Compensation equity within these guidelines shall apply the principle of equal pay for equal work by placing positions with comparable duties, responsibilities, and difficulties in the same pay ranges.

11.041 Since it is the intent of this policy to establish and maintain compensation equity, pay ranges shall be related to the classification of positions, while actual pay within pay ranges will be related to the job performance of the incumbents of positions. Once position classifications and pay ranges have been established, it is the responsibility of supervisors and department heads to determine specific compensation of staff members within ranges established for the position they hold."

Section 11.1 gives the responsibility and authority for administering the AUCP at the University of Arizona to the director of personnel or his designee who is required, inter alia, to classify and assign pay grades and ranges to positions, classify all proposed AUCP-covered positions prior to establishment, approve reclassification of positions, and periodically review all positions in the plan to ensure their current status.

Section 11.2 of the staff manual provides the procedure for establishing a new position or requesting a review of an existing position. The procedure starts with the department head, who must complete a Position Questionnaire to establish a new position or request a reclassification review of an existing staff position. The questionnaire is then forwarded to the Personnel Compensation/Classification Section. From there it goes to the record section, back to the department head, and back to the record section before all the necessary information is included so that it can be submitted to the director of personnel.

Although the staff manual has a grievance procedure, job classifications are specifically exempted from the staff grievance procedure.

The number of job titles available to the reclassification auditor after 1980 were reduced substantially when the Arizona Universities Compensation System (subsequently entitled AUPS) was established by the Arizona State Legislature.

Plaintiff filed suit in 1982, and the case was submitted to a jury which found that plaintiff had a contractual right to be reclassified and paid in accordance with the nature of the work he performed, which right arose from the language contained in the University of Arizona Staff Personnel Policy Manual, and awarded damages in the amount $25,000. The court awarded plaintiff's attorney's fees in the sum of $14,022.50 plus costs.

 Personnel manuals can become part of employment contracts. *Leikvold v. Valley View Community Hospital,* 141 Ariz. 544, 688 P.2d 170 (1984). The issue of whether the AUCP created in the plaintiff a contractual right to reclassification is a question of law for the court.

We do not believe that the compensation policy in the AUCP creates any such enforceable contract right. The main purpose of the plan was to create uniformity between the three state universities as far as job descriptions, rate structures, and job evaluations, and not the adoption of the doctrine of comparable worth. The fact that classification is not subject to the grievance procedure demonstrates that the framers of the plan intended to create no contractual right to reclassification. Reclassification is subject to the unbridled discretion of the director of personnel or his designee. Every statement of policy in a personnel manual does not create enforceable contract rights. To hold otherwise would put the courts and juries in the business of governing the universities, a position for which courts and juries are clearly unsuited.

Reversed and remanded with instructions to enter judgment in favor of the defendant.

HATHAWAY, C.J., and FERNANDEZ, J., concur.