**John M. HUEY; Cheryl Huey, Plaintiffs–Appellants,**

v.

**HONEYWELL, INC., Defendant–Appellee.**

No. 94–15748.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 20, 1995.

Decided April 30, 1996.

David B. Earl, Jennings, Strouss & Salmon, Phoenix, Arizona, for plaintiffs-appellants.

Lonnie J. Williams, Jr., Snell & Wilmer, Phoenix, Arizona, for defendant-appellee.

Before: FERGUSON and HAWKINS, Circuit Judges, and WM. FREMMING NIELSEN, District Judge.*

FERGUSON, Circuit Judge:

Plaintiffs, John M. Huey and Cheryl Huey, appeal the district court's grant of summary judgment for defendant, Honeywell Inc., with respect to plaintiffs' breach of employment contract and intentional infliction of emotional distress claims.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse the district court's grant of summary judgment on the breach of employment contract claim and affirm the district court's grant of summary judgment on the intentional infliction of emotional distress claim.

### I. *Standard of Review*

A grant of summary judgment is reviewed de novo. *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir. 1994). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* An appellate court reviews a district court's determination of state law de novo. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1220–21, 113 L.Ed.2d 190 (1991).

### II. *Factual and Procedural Background*

The facts of this case as presented to the district court, viewed in the light most favorable to the plaintiffs, are as follows. Honeywell hired John Huey in 1989 to work part-time in its Shipping and Receiving department. Huey became a full-time employee in January 1990. Since that time, he consistently received high job performance ratings and letters of recommendation from Honeywell in recognition of his outstanding job performance.

Honeywell's standards of employee conduct and disciplinary procedures for violations of those standards are set out in written policies and in the company's personnel manual. However, these written policies and the personnel manual are not distributed to Honeywell employees. Rather, Honeywell relies on its supervisors to inform its employees of the company's disciplinary procedures. This company practice is reflected in one of Honeywell's written policies which provides: "[a]ll Honeywell employees work under the direction of a supervisor.... The supervisor is also your link to management and is responsible for informing you about Company events and policies that may effect you or your work."

Honeywell's disciplinary procedures, relayed to Honeywell employees through their supervisors, provide that Honeywell will give all employees a series of verbal and written warnings, along with opportunities to be heard and to improve, before they are terminated. The disciplinary procedures further provide that: employees will be given the benefit of any doubts during the investigation of disciplinary charges; there must be documentation to support any termination for violation of a company policy; and discipline will be mitigated when an employee violates

---

* Honorable Wm. Fremming Nielsen, United States District Judge, for the Eastern District of Washington, sitting by designation.

a company policy in reliance on a supervisor's representation of that policy.

One provision in the personnel manual which routinely is *not relayed* to Honeywell's employees by their supervisors is the following disclaimer: "Employment at Honeywell, Inc. is voluntarily entered into and employees are free to resign at any time. Similarly, Honeywell may terminate the employment relationship where it believes it is in the Company's best interests. The policy statements contained in this manual do not intend to negate this principle." Acting in accordance with company practice, Huey's supervisor, Ray Goodman did not communicate this disclaimer to Huey.

While the record before us does not indicate if Goodman specifically advised Huey of Honeywell's progressive discipline policy, it does show that the company so advised its supervisors and did so in a manner that constituted an announcement of policy that was sufficient for employees like Huey to rely upon.

Honeywell's hourly employees, such as Huey, were supposed to turn in time cards only if they worked more or less than forty hours per week. However, under what Huey's supervisor, Ray Goodman, called his "flextime" policy, employees in Goodman's department were instructed that they could work more than forty hours in one week, not submit a time card for overtime, and then work fewer than forty hours in a subsequent week to make up the difference. Goodman also allowed his employees to take time off work without reporting it if they made it up at a later date. Goodman's supervisors and the Human Resources representative for Goodman's department were aware of his flextime policy.

Huey was one of many Honeywell employees in the Shipping and Receiving department to utilize Goodman's flextime policy. In doing so, Huey never claimed or received payment for any hours which he did not actually work. In March 1991, two of Huey's co-workers informed Honeywell's personnel department that they suspected Huey of falsely reporting his time. In response, Honeywell's security division conducted an investigation of Shipping and Receiving. In the course of this investigation, the security division compared Huey's time entries with data collected at Honeywell's entrance and exit gates. The gates at Honeywell always record the time at which an employee enters, but only record the time at which an employee exits if the employee leaves after 6:00 p.m. on weekdays, or exits on the weekend.

The comparison of Huey's gate and time records revealed five inconsistencies. One inconsistency was due to Huey's attendance at a work-related seminar. The other four inconsistencies were due to Goodman's flextime policy. As a result of these discrepancies, Huey was suspended, pending further investigation. However, further investigation failed to include any discussions with Huey or Goodman. Rather than speaking with Huey, Honeywell hired a private investigation firm, Pinkerton, Inc., to investigate both Huey and Air Mobile Parts, a vendor for Honeywell's Shipping and Receiving department.

Pinkerton, in its investigation of Huey, engaged in the following activities: Pinkerton followed Huey on his way home from work; established surveillance points at Huey's home; videotaped Huey's activities; and at Honeywell's request, obtained personal information relating to Huey, his wife, and other members of Huey's family.

Huey was finally called in for an interview with Honeywell's management on April 4, 1991. Huey tried to explain that the discrepancies on his time card were due to Goodman's flextime policy, but he was told that the decision to terminate him had already been made. Huey was told at this meeting that he was officially terminated. No other employees in Huey's department were terminated or disciplined for utilizing Goodman's flextime policy.

Huey brought suit in Arizona state court against Honeywell for breach of employment contract. Honeywell subsequently removed the case to federal court on the basis of diversity jurisdiction. The Hueys then amended their complaint, adding claims for intentional infliction of emotional distress and loss of consortium. Honeywell, in its answers to Huey's two amended complaints,

admitted that Huey could only be terminated for cause. Honeywell subsequently filed an amended answer to Huey's Second Amended Complaint, in which it denied the allegation that Huey could only be terminated for cause.

Honeywell moved for summary judgment on all claims. The district court denied this motion with respect to Huey's breach of employment contract and loss of consortium claims. The court explained that Honeywell's admission in its initial answer to the Second Amended Complaint regarding Huey's status as a just cause employee precluded summary judgement. The court granted Honeywell's summary judgement motion with respect to the intentional infliction of emotional distress claim.

Honeywell moved for reconsideration of summary judgment on the breach of contract and loss of consortium claims. The court granted Honeywell's motion for reconsideration and Honeywell's motion for summary judgment on the remaining claims. The court concluded that Honeywell's withdrawn admission regarding Huey's status as a just cause employee was insufficient to establish that such a contract term existed.

Huey now appeals the district court's grant of summary judgment on the breach of employment contract and intentional infliction of emotional distress claims.

### III. Breach of Employment Contract

Under Arizona state law, a contractual relationship between an employer and an employee with no specified duration is presumed to be "at-will" unless modified by the parties' representations or course of dealing. *Wagner v. City of Globe*, 150 Ariz. 82, 722 P.2d 250, 254 (1986). *See also Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 710 P.2d 1025, 1036 (1985). Whether the parties intend to modify an at-will contract is a question of fact. *Wagner*, 722 P.2d at 254.

Three general exceptions to the at-will employment presumption have developed. First, the public policy exception to the at-will doctrine permits an at-will employee to recover for wrongful discharge upon a finding that the employer's conduct undermined an important public policy. *Wagenseller*, 710 P.2d at 1031. Second, an exception based on contract law allows an at-will employee to recover for wrongful discharge upon proof of an implied-in-fact promise of employment for a specific duration. Such an implied-in-fact promise can be found "in the circumstances surrounding the employment relationship, including assurances of job security in company personnel manuals or memoranda." *Id.* Third, courts have found an implied-in-law covenant of "good faith and fair dealing" in employment contracts and have held employers liable in both contract and tort for breach of this covenant. *Id.*

At issue in the present case is whether Huey's at-will employment relationship was modified by an implied-in-fact promise from Honeywell. Implied-in-fact contract terms are inferred from the statements or conduct of the parties. "Courts have found [implied-in-fact] terms in an employer's policy statements regarding such things as job security and employee disciplinary procedures, holding that by the conduct of the parties these statements may become part of the contract, ... thus limiting the employer's absolute right to discharge an at-will employee." *Id.* at 1036. Arizona is among the states that recognize implied-in-fact promises as an exception to the at will doctrine. *Id.*

The court in *Leikvold v. Valley View Community Hosp.*, 141 Ariz. 544, 688 P.2d 170 (1984), addressed the issue of whether representations made in a personnel manual can modify an at-will employment contract. When Leikvold was hired, she was not given an employment contract for a specific duration, nor was she told that she would be discharged only for cause. However, Leikvold was provided with a policies manual and told that the policies contained therein were followed by the hospital with respect to its employee relationships. When Leikvold became Director of Nursing, she was further informed that the policies manual was to be explicitly followed whenever an employee was to be fired. *Id.* 688 P.2d at 173.

The policies manual contained information on a number of topics including: wages, holi-

days, sick time, insured benefits, proper attire, complaint and grievance procedures, and dismissal procedures. *Id.* The manual's section on dismissal provided that: every effort would be made to help employees adjust to the job; if an employee is discharged after the first three months of employment, two weeks notice of the discharge would be given; and gross violations of hospital rules are grounds for immediate dismissal without two weeks notice. *Id.* Leikvold contended that these provisions in the policies manual became part of her employment contract, thereby limiting the hospital's absolute right to discharge her.

The court in *Leikvold* held that a personnel manual can become part of an employment contract. *Id.* 688 P.2d at 174. The court explained that whether a particular personnel manual modifies an employment relationship is a question of fact. Evidence relevant to this factual determination includes the language in the personnel manual, as well as the employer's course of conduct and oral representations regarding it. If a personnel manual clearly and conspicuously tells employees that the manual is not a part of the employment contract and the manual states that employees are terminable at will, no implied-in-fact promises are created by the manual. *Id.* "However, if an employer does choose to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it." *Id.* The Arizona Supreme Court in *Leikvold* held that the trial court erred in granting summary judgment to the hospital because a material question of fact existed as to whether the policies manual was incorporated into Leikvold's employment contract. *Id. See also Wagner v. City of Globe,* 150 Ariz. 82, 722 P.2d 250, 254 n. 5 (1986) (stating that the presence of disclaiming language in a personnel manual may not insulate an employer from liability if contrary oral or written assurances are given to the employee because such assurances may constitute implied contracts).

The court in *Wagenseller* also addressed the implied-in-fact exception to the at-will doctrine. The court explained that where reasonable minds could differ as to whether an employer's personnel manual had became a part of its employment contracts, questions of fact exist which must be resolved at trial, thereby rendering summary judgment inappropriate. *Wagenseller,* 710 P.2d at 1038.

As applied to the facts presented by the plaintiffs in the present case, *Leikvold* and *Wagenseller* illustrate the district court's error in granting summary judgement to Honeywell. Summary judgment was improper because a material question of fact existed as to whether Huey's employment contract had been modified by Honeywell's representations and course of conduct.

The following actions by Honeywell created a material question of fact as to Huey's employment status as an at-will employee: (1) Honeywell developed written policies and a personnel manual adopting a progressive disciplinary program; (2) Honeywell relies on its supervisors to orally explain its personnel policies to other employees; (3) Honeywell's written policies and personnel manual were not distributed to its employees; (4) Although the personnel manual contained a disclaimer which stated that no portion of the manual was to be interpreted as altering Honeywell's at-will employment contracts, this waiver was not orally relayed to Huey and he was not given a copy of the manual; and (5) Huey was aware of other employees at Honeywell who were progressively disciplined, rather than terminated, for violating company policies.

■■■ The language of the court in *Leikvold* bears repeating:

> [I]f an employer does choose to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it. Having announced a policy, the employer may not treat it as illusory.

*Leikvold,* 688 P.2d at 174. Honeywell clearly chose to issue a policy statement that it would practice progressive discipline by setting forth such a policy in its manual and relying upon its supervisors to relay this policy to other employees. Therefore,

Honeywell may not treat this policy as illusory.

Moreover, beyond Honeywell's course of conduct, Honeywell admitted in its initial answers to Huey's First and Second Amended Complaints that Huey was hired as a just cause employee. Despite the fact that Honeywell later amended its answers to deny this allegation, Honeywell's admissions are still admissible evidence, though not conclusive, like any other extrajudicial admission made by a party or its agent.

> When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated, though controvertible, like any other extrajudicial admission made by a party or his agent. If the agent made the admission without adequate information, that goes to its weight, not to its admissability.

*Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.,* 32 F.2d 195, 198 (2nd Cir.), *cert. denied,* 280 U.S. 579, 50 S.Ct. 32, 74 L.Ed. 629 (1929) (citations omitted); *See also Borel v. United States Casualty Co.,* 233 F.2d 385, 387–88 (5th Cir.1956). Honeywell's admissions create an additional issue of material fact with respect to Huey's employment status.[1]

As previously stated, we must view the evidence in the light most favorable to the nonmoving party when reviewing a district court's grant of summary judgment. Viewed in this light, there clearly exists genuine issues of material fact with respect to Huey's employment status, thus precluding summary judgment.

We reject the assertion that in order for an Arizona employment practice to be modified, there must be an intentional formal announcement and explicit modification of the terms of employment. As stated above, Arizona courts have recognized three exceptions to the at-will employment doctrine: a public policy exception, an implied-in-fact job security exception, and an implied-in-law covenant of good faith and fair dealing. *See Wagenseller,* 710 P.2d at 1033–41. All of these exceptions, which do not constitute express formal modifications of the terms of employment, act to limit an employer's absolute right to discharge an at-will employee. A course of conduct is sufficient to create a modification of the terms of employment.

In conclusion, the district court erred in granting Honeywell's motion for summary judgment on Huey's breach of employment contract claim because: (1) There is a genuine issue of material fact as to whether Honeywell's representations and course of conduct constituted implied-in-fact promises which altered Huey's status as an at-will employee; and (2) Honeywell's admissions in its initial answers to Huey's First and Second Amended Complaints create a genuine issue of material fact with respect to Huey's employment status.

## IV. *Intentional Infliction of Emotional Distress*

Huey also alleges on appeal that the district court erred in granting Honeywell's motion for summary judgment on Huey's intentional infliction of emotional distress claim.

In Arizona, three elements are necessary to establish a claim for the tort of intentional infliction of emotional distress: (1) the conduct by the defendant must be extreme and outrageous; (2) the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from her conduct; and (3) severe emotional distress must in fact occur as a result of the defendant's conduct. *Ford v. Revlon, Inc.,* 153 Ariz. 38, 734 P.2d 580, 585 (1987).

Regardless of the facts alleged by Huey with respect to Honeywell's conduct, Huey's intentional infliction of emotional distress claim must fail because Huey failed to present any evidence showing that he actually suffered severe emotional distress. Summary judgment is required against a party

---

1. We leave for another day whether an admission in a superceded pleading is evidence that, in and of itself, can defeat a summary judgment.

"who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Because Huey failed to present any evidence establishing that he actually suffered severe emotional distress, the district court was correct in granting summary judgment on this claim.

### V. *Attorneys Fees and Costs on Appeal*

A.R.S. § 12–341.01 provides that in "any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees." The Arizona Supreme Court in *Wagenseller* held that a party who appeals and succeeds in reversing the trial court's entry of summary judgment is a "successful party" within in the meaning of A.R.S. § 12–341.01, and is thus eligible to recover attorney's fees. *Wagenseller v. Scottsdale Memorial Hosp.,* 147 Ariz. 370, 710 P.2d 1025, 1048 (1985). However, because success on appeal was equally shared by both parties, both parties' requests for attorney's fees and costs are denied.

### VI. *Conclusion*

The district court's grant of summary judgment to Honeywell for Huey's breach of employment contract claim is reversed. The district court's grant of summary judgment to Honeywell with respect to Huey's claim of intentional infliction of emotional distress is affirmed. The parties' requests for attorney fees and costs are denied.