708 P.2d 110

**Gary J. JESKI, a single man, Plaintiff-Appellant,**

v.

**AMERICAN EXPRESS COMPANY, a New York corporation licensed to do business within the State of Arizona, Defendant-Appellee.**

**No. 1 CA--CIV 7732.**

Court of Appeals of Arizona, Division 1, Department C.

Oct. 8, 1985.

Sexton, Lenaburg & Taylor, P.C. by Edward V. Sexton, Harry J. Lenaburg, Phoenix, for plaintiff-appellant.

Shimmel, Hill, Bishop & Gruender, P.C. by Daniel F. Gruender, Susan R. Bolton, James N. Nelson, Phoenix, for defendant-appellee.

## OPINION

BROOKS, Judge.

This action for damages arises from the discharge of plaintiff-appellant, Gary Jeski, by his former employer, defendant-appellee American Express Company.

The history of Jeski's employment and the circumstances of his termination are virtually undisputed. Jeski was hired by American Express as a credit analyst in 1972. By 1979 he had become supervisor of account services, a position which he retained until his dismissal in early 1983. During his years with the company, Jeski received no indication that his performance was unsatisfactory. Regular promotions and pay raises had created, in fact, the opposite impression. On the day of his dismissal, Jeski was called to the office of the Director of Personnel who told Jeski before a number of witnesses that he was being terminated for sending a package containing obscene materials through the mail to an American Express management employee. Jeski denied any knowledge of the matter but was fired nonetheless. He was given no opportunity whatsoever to address the allegation brought by his employer. The director of security simply escorted Jeski to his desk to collect his personal belongings and then to the exit of the building. The employee who actually sent the offending package has since come forward, at the cost of his own job, to admit responsibility and to exonerate Jeski.

Jeski filed a five count complaint against American Express seeking damages for breach of contract (count one), fraud and misrepresentation (count two), wrongful termination (count three), infliction of emotional distress (count four), and defamation (count five). American Express filed a motion to dismiss counts one through four for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6), Arizona Rules of Civil Procedure (Rule). Counts two through four were dismissed by the trial court with leave to file an amended complaint. Since matters outside of the pleadings were presented with respect to count one (breach of contract), the trial court treated the motion to dismiss this count as a motion for summary judgment as required by Rule 12(b). The trial court thereafter granted the motion and entered its formal written order granting summary judgment in favor of American Express on count one of the complaint.[1] This appeal followed.

In reviewing the granting of a summary judgment, the evidence must be viewed in a light most favorable to the losing party, with that party being given the benefit of all favorable inferences that may be reasonably drawn from the evidence. If, when viewed in this manner, reasonable persons could reach different conclusions as to whether there is a genuine issue as to any material fact, the judgment must be reversed. *Wisener v. State*, 123 Ariz. 148, 598 P.2d 511 (1979). In light of certain provisions contained in American Express' personnel manual, we conclude that genuine issues of material fact remain, and accordingly we reverse the trial court's entry of summary judgment.

Although there was no formal written employment contract between Jeski and American Express, Jeski had in his possession at the time of his discharge a copy of the "Employee Information Kit" (hereafter referred to as the personnel manual) which is distributed to American Express employ-

ees. Our attention has been directed to specific language contained in several sections found under the caption, COMPANY POLICIES AND PRACTICES:

### Resignations and Terminations

As you know, your employment with American Express Company *can be terminated at any time* by either the Company or yourself. We hope that there will be *no reason* for your employment to terminate before retirement. . . .

### A Word About Unions

We feel that a union would not be of advantage to any of us—it would hurt the business which we all depend on for our livelihood. Furthermore, we have enthusiastically accepted our responsibility to provide you good working conditions, good wages, good benefits, *fair treatment and the personal respect which is rightfully yours.*

\*   \*   \*   \*   \*   \*

We are pledged to high standards of individual treatment and respect for all employees. You can be certain that we will constantly strive to maintain your respect for our individual treatment of your welfare and *job security.*

\*   \*   \*   \*   \*   \*

### Freedom of Discussion

\*   \*   \*   \*   \*   \*

It is the goal of the Western Regional Operations Center to have a staff of qualified management personnel who treat employees fairly, with dignity and respect.

\*   \*   \*   \*   \*   \*

(Emphasis added.)

Under the traditional at-will employment doctrine, either the employee or the employer may terminate the relationship at any time with or without cause. *See e.g. Daniel v. Magma Copper Co.*, 127 Ariz. 320, 620 P.2d 699 (App.1980); *Larsen v.*

---

1. The summary judgment on count one of the complaint contained appropriate language of finality as required by Rule 54(b). This judgment is, therefore, separately appealable even though a number of Jeski's claims against American Express remain unresolved in the trial court.

*Motor Supply Company*, 117 Ariz. 507, 573 P.2d 907 (App.1977). The modern erosion of the at-will doctrine, however, is reflected in a number of recent decisions in Arizona and a majority of other jurisdictions.[2] The most widely-recognized exception to the terminable at-will rule arises when discharge contravenes some well-defined public policy.[3] Thus, in *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025 (1985), our supreme court reversed a summary judgment which had been entered in favor of an employer, in an action for wrongful discharge brought by the employee, where the employee was allegedly discharged because of her refusal to participate in activities which could have arguably violated Arizona's indecent exposure statute, A.R.S. § 13–1402.

 Although an employment contract for an indefinite term is presumed to be terminable at will, that presumption, like any other presumption, is rebuttable. Thus in *Leikvold v. Valley View Community Hospital*, 141 Ariz. 544, 688 P.2d 170 (1984), it was held that representations made by an employer in a personnel or policies manual may become part of an employment contract, and may modify the employer's right to terminate an otherwise at-will employee. In *Leikvold*, a nurse had been discharged for reasons and by procedures not in accordance with those set forth in her former employer's policies manual. The court stated:

> We do not mean to imply that all personnel manuals will become part of employment contracts. Employers are certainly free to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract and that their jobs

are terminable at the will of the employer with or without reason. Such actions, either not issuing a personnel manual or issuing one with clear language of limitation, instill no reasonable expectations of job security and do not give employees any reason to rely on representations in the manual. However, if an employer does choose to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it. Having announced a policy, the employer may not treat it as illusory.

141 Ariz. at 548, 170 P.2d at 174. The court reversed entry of summary judgment in favor of the hospital-employer and described the procedure to be followed in determining whether an employer is liable in contract for failure to adhere to representations contained in unilaterally-promulgated employer handbooks or personnel policy manuals.

 First, whether any provision contained in such a manual becomes part of the employment contract is a question of fact. In making this determination, the trier of fact must examine evidence, including the language used in the manual, and any oral representations or course of conduct which tend to support a reasonable reliance on the part of the employee. In the instant case, American Express has eliminated the need for us to address this preliminary question of fact by conceding, for the purpose of these proceedings, that the policies expressed in its personnel manual are indeed a part of its employment contract with Jeski.

Once the manual is found to be part of the employment contract, the precise meaning of the terms of that contract must be

**2.** At least thirty states now recognize some type of cause of action for wrongful discharge of an at-will employee. *See* Lopatka, *The Emerging Law of Wrongful Discharge—A Quadrennial Assessment of the Labor Law Issue of the 80's*, 40 Bus.Law. 1–32 (1984).

**3.** *See e.g. Petermann v. International Bhd. of Teamsters Local 396*, 174 Cal.App.2d 184, 344

P.2d 25 (1959) (Employee discharged for refusing to commit perjury); *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981) (dismissal for informing police of co-employee's possible criminal activity); *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975) (discharge for performing jury duty).

determined. If the terms are clear and unambiguous, the court may determine as a matter of law the proper construction of the contract terms. However, if the terms are amenable to more than one reasonable construction, the contract is ambiguous and extrinsic evidence may be used to determine its true meaning. *Leikvold v. Valley View Community Hospital, supra; Associated Students of the University of Arizona v. Arizona Board of Regents,* 120 Ariz. 100, 584 P.2d 564 (App.1978), *cert. denied,* 440 U.S. 913, 99 S.Ct. 1226, 59 L.Ed.2d 462 (1979).

American Express argues that none of the provisions in the policy manual could logically or reasonably be interpreted as containing any promises of job security nor do they create a standard which must be met before the employment relationship can be severed. It argues that the quoted portions of the personnel manual say nothing concerning circumstances under which an employee could or could not be terminated and cannot be interpreted as imposing any restrictions upon American Express that vary from the traditional employment at-will doctrine. We find, however, that although the interpretation placed upon the terms by American Express may not be unreasonable, there are also other reasonable inferences that can be drawn from such provisions. The manual purports to make a number of assurances of fair treatment, personal respect, and significantly, job security, a concept completely at odds with the traditional at-will employment relationship. These broad terms can reasonably be construed in more than one sense, and their meaning cannot be determined within the four corners of the agreement. If any agreement is found to be ambiguous and there is the slightest doubt as to whether a factual issue remains in dispute, the granting of summary judgment is erroneous and such doubt must be resolved in favor of a trial on the merits. *Newmont Exploration Ltd. v. Siskon Corp.,* 125 Ariz. 267, 609 P.2d 82 (App.1980).

We are fully cognizant of the fact that our supreme court has recently rejected the argument that a no cause termination breaches an implied covenant of good faith and fair dealing in an employment-at-will relationship. *Wagenseller v. Scottsdale Memorial Hospital, supra.* However, the court also reasoned as follows:

[w]e do not feel that we should treat employment contracts as a special type of agreement in which the law refuses to imply the covenant of good faith and fair dealing that it implies in all other contracts. As we noted above, the implied-in-law covenant of good faith and fair dealing protects the right of the parties to an agreement to receive the benefits of the agreement that they have entered into. *The denial of a party's right to those benefits, whatever they are, will breach the duty of good faith implicit in the contract. Thus, the relevant inquiry will always focus on the contract itself, to determine what the parties did agree to.*

*Wagenseller,* 147 Ariz. at 385, 710 P.2d at 1040.

It is undisputed, for the purpose of these proceedings, that Jeski was summarily discharged from his employment *solely* because of the false accusation that he had sent obscene materials to another employee. Further, he was given no notice or opportunity to respond to this accusation.

Whether the personnel manual at issue in this case modified the employment-at-will relationship between the parties and, if so, whether the resulting employment contract was breached by American Express are disputed questions of material fact that must be resolved by the trier of fact. We therefore conclude that summary judgment was improperly granted.

Entry of summary judgment is reversed, and this case is remanded to the trial court for proceedings consistent with this opinion.

EUBANK and KLEINSCHMIDT, JJ., concur.