**Marvin BERNSTEIN, Plaintiff–Appellant,**

v.

**AETNA LIFE & CASUALTY; Aetna Casualty and Surety Company, a Connecticut corporation; Aetna Casualty and Surety Company of America, a Connecticut corporation; Aetna Casualty and Surety Company of Illinois, a Connecticut corporation; Aetna Fire Underwriters Insurance Company, a Connecticut corporation; Aetna Life Insurance and Annuity Company, a Connecticut corporation; Aetna Life Insurance Company, a Connecticut corporation; Aetna Life Insurance Company of Illinois, an Illinois corporation; Greg M. Fischer, husband; Jane Doe Fischer, wife, Defendants–Appellees**

No. 86–2358.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 16, 1987.

Decided March 31, 1988.

Grace McIlvain, Miller & Pitt, P.C., Tucson, Ariz., for plaintiff-appellant.

David J. Hamilton, O'Melveny & Myers, Los Angeles, Cal., for defendants-appellees.

Before FLETCHER, WIGGINS and NOONAN, Circuit Judges.

WIGGINS, Circuit Judge:

Marvin Bernstein appeals partial summary judgment for Aetna Life & Casualty ("Aetna") and summary judgment for Greg Fischer. Bernstein was fired by Aetna, and he sued the company and his immediate supervisor, Fischer. Bernstein claimed (1) age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1982), and the Arizona Civil Rights Act (ACRA), Ariz.Rev.Stat. Ann. §§ 41–1461–1465 (1985 & Supp.1987), (2) religious discrimination under Title VII, 42 U.S.C. §§ 2000e *et seq.*, and the ACRA, (3) wrongful discharge, (4) breach of an implied employment contract, and (5) tortious interference with a business relationship. The district court granted summary judgment to defendant Fischer on all counts, and to Aetna on counts 3, 4 and 5. We reverse and remand.

BACKGROUND

Bernstein worked for Aetna 24 years. His last position was as the District Manager of the Tucson District Office of the Phoenix Career General Agency. Bernstein claims he was told when he joined Aetna that it was a lifetime career and there would always be a position at Aetna for someone who did well. These alleged promises were reinforced by later statements by superiors and others. Since Bernstein had previously held a supervisory position with Aetna, he claimed to know of Aetna's personnel policies and practices. He alleged it was Aetna's policy or practice that long-term employees who encountered performance difficulties would be counseled, transferred, or offered a demotion, but would not be terminated unless they were guilty of wrongdoing such as embezzling or misallocating funds. Bernstein claims he relied on Aetna's written personnel policies setting forth detailed procedures for warning and probation periods.

In May, 1980, Greg Fischer became the General Agent in Phoenix and thus Bernstein's supervisor. Bernstein claims Fischer was prejudiced against him as a Jew and as an older employee. In October, 1982, Fischer put Bernstein on written warning. This was, Aetna claims, prompted by Bernstein's failure to meet certain standards in the years 1980, 1981, and the first half of 1982. After the warning period, Bernstein was put on probation. He was again given a ninety-day goal to meet. Bernstein was fired on April 29, 1983.

On October 11, 1983, Bernstein filed a charge of age and religious discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Arizona Civil Rights Division ("ACRD"), naming Aetna as the sole respondent and alleging that John Michael, a vice-president of Aetna, was responsible for his termination. Greg Fischer was not mentioned by name or title. The ACRD investigated the matter and found that there was "no cause" to believe that Aetna had discriminated against Bernstein.

On October 4, 1984, Bernstein and his wife filed a five-count complaint against Aetna, as well as against Greg Fischer and his wife. The district court later dismissed the wives from this action. The district court also dismissed the age and religious discrimination claims against Greg Fischer, under both Arizona and federal law. The court also dismissed the common law claims (counts 3, 4, and 5) against Fischer for lack of pendent jurisdiction. Upon motion, the district court permitted Bernstein to amend his complaint to allege diversity jurisdiction in addition to federal question

jurisdiction, thus, in effect, reinstating the state-law claims against Fischer. Bernstein filed an amended complaint to this effect. Thereafter, the district court granted summary judgment to Aetna and Fischer on counts 3, 4, and 5, and to Fischer alone on counts 1 and 2. The district court entered final judgment, pursuant to Fed.R. Civ.P. 54(b), on these counts. As a result, only the age and religious discrimination claims against Aetna remain in the district court. Bernstein timely appeals.

## ANALYSIS

### A. Standard of Review.

A district court's grant of a motion for summary judgment is reviewed by the appellate court *de novo.* The general standard an appellate court applies in reviewing the grant of such a motion is the same as that employed initially by the district court under Fed.R.Civ.P. 56(c). *Allen v. A.H. Robins Co.,* 752 F.2d 1365, 1368 (9th Cir. 1985). Rule 56(c) states that summary judgment is proper when the pleadings and discovery, read in the light most favorable to the non-moving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

### B. Failure to Name Fischer in the Administrative Charge.

The district court granted Fischer's motion to dismiss on counts 1 and 2 for lack of subject matter jurisdiction. The basis for this dismissal was that Bernstein's charge of discrimination filed with the ACRD did not name Fischer. There is no question that Fischer is not mentioned by name in the charge.

■ The court below ruled that Bernstein had failed to allege facts ·in the charge from which the court could infer that the unnamed party violated Title VII or the ADEA. *See Chung v. Pomona Valley Community Hosp.,* 667 F.2d 788, 792 (9th Cir.1982). A reading of the charge filed with the ACRD undermines this find-

ing. Bernstein stated that the reason for his firing was that he "failed to meet the probationary period requirements." He then wrote, in his discrimination statement, that "the rationale given by [Aetna] to justify my termination is pretextual." Aetna has conceded that Fischer established the terms of Bernstein's probation. This satisfies the requirement of alleging facts from which the court could infer that the unnamed party violated Title VII or the ADEA. *See Bratton v. Bethlehem Steel Corp.,* 649 F.2d 658, 666 (9th Cir.1980); *Wasilchuk v. Harvey's Wagon Wheel, Inc.,* 610 F.Supp. 206, 208 (D.Nev.1985).[1]

We rule that even using the standard employed by the district court, Fisher's dismissal was not warranted because even though not named in the administrative charge, the facts alleged therein make out a claim against him.

### C. Retroactivity of Arizona Court Decisions Allowing Common Law Actions for At–Will Employees.

■ The district court granted summary judgment on counts 3, 4, and 5 on two rationales. The first ground was that each of these counts was erroneously premised on two Arizona Supreme Court cases, *Leikvold v. Valley View Community Hosp.,* 141 Ariz. 544, 688 P.2d 170 (1984), and *Wagenseller v. Scottsdale Memorial Hosp.,* 147 Ariz. 370, 710 P.2d 1025 (1985), that were decided after Bernstein's cause of action arose and had only prospective effect. The district court, apparently relying on previous cases raising this issue, decided that *Wagenseller* and *Leikvold* should not be applied retroactively. We find, however, that *Wagenseller* and *Leikvold* have retroactive effect.

In Arizona, there is a presumption that decisions relating to civil matters have retroactive effect. *Hawkins v. Allstate Ins. Co.,* 152 Ariz. 490, 504, 733 P.2d 1073, 1087, *cert. denied,* —— U.S. ——, 108 S.Ct. 212, 98 L.Ed.2d 177 (1987); *Chevron Chemical*

---

1. Even if we were to apply the rule that Title VII charges can be brought against persons not named in an EEOC complaint as long as they were involved in the acts giving rise to the EEOC claims, *Wrighten v. Metropolitan Hosp., Inc.,* 726 F.2d 1346, 1352 (9th Cir.1984), we would reach the same result.

*Co. v. Superior Court,* 131 Ariz. 431, 435–36, 641 P.2d 1275, 1279–80 (1982). To overcome this presumption of retroactive application Arizona uses the three factors set forth by the United States Supreme Court in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971). A decision will be deemed prospective only where (1) it establishes a new legal principle by either overruling clear and reliable precedent or deciding an issue whose resolution was not clearly foreshadowed (the "foreshadowing" or "reliance" factor); (2) retroactive application will retard operation of the rule, considering its prior history, purpose and effect (the "purpose" factor); and (3) retroactive application will produce substantial inequitable results (the "inequity" factor). *See Hawkins,* 152 Ariz. at 504, 733 P.2d at 1087. While it is uncertain whether these three factors should be balanced together, as the U.S. Supreme Court suggests, *Chevron Oil,* 404 U.S. at 106–07, 92 S.Ct. at 355–56, or whether each of the three factors must be satisfied before a decision is given *only* prospective effect, *Chevron Chemical,* 131 Ariz. at 436, 641 P.2d at 1280, the district court reached an incorrect result in applying them.

The parties vigorously dispute whether the decisions in *Wagenseller* and *Leikvold* were foreshadowed in previous decisions by Arizona courts. Aetna suggests that the previous rule of an at-will employer's complete freedom to discharge employees, established in *Dover Copper Mining Co. v. Doenges,* 40 Ariz. 349, 357, 12 P.2d 288, 291–92 (1932), controlled until it was explicitly overruled by *Wagenseller.* It seems, however, that Arizona courts have themselves admitted that the rule in *Dover Copper* had been disintegrating for years. The Arizona Supreme Court in *Wagenseller* approvingly cited the language in *Vermillion v. AAA Pro Moving & Storage,* 146 Ariz. 215, 216, 704 P.2d 1360, 1361 (Ct.App.1985), arguing that its ruling upholding a public policy exception for at-will employment was the "logical conclusion" drawn from previous decisions of the court of appeals. *Wagenseller,* 147 Ariz. at 378, 710 P.2d at 1033 (citing the earlier appeals decisions in

*Daniel v. Magma Copper Co.,* 127 Ariz. 320, 620 P.2d 699 (Ct.App.1980), and *Larsen v. Motor Supply Co.,* 117 Ariz. 507, 573 P.2d 907 (Ct.App.1977)). Moreover, the *Wagenseller* court approved of the rule in *Leikvold* as "merely a reiteration of employment law as it has existed for centuries." *Wagenseller,* 147 Ariz. at 383, 710 P.2d at 1038. *See also Wagner v. City of Globe,* 150 Ariz. 82, 85 n. 3, 722 P.2d 250, 253 n. 3 (1986) ("Despite the growing trend to create exceptions to the at-will doctrine, which may eventually swallow the rule, employers continue to cling to the doctrine. Exactly why is uncertain...."). It seems clear, therefore, that Arizona courts have themselves decided that the decisions in *Leikvold* and *Wagenseller* were foreshadowed by earlier case law.

Even if the foreshadowing prong of the *Chevron Oil* test is not decisive, Bernstein has persuasively argued that the purpose and inequity factors also weigh against a finding of solely prospective effect. While Aetna has suggested that application of the old rule to discharges occurring before *Wagenseller* "will more faithfully serve the goals of predictability and order than would be the case if [the court] retroactively imposed the new [rules]" (*quoting Wiltshire v. Standard Oil Co.,* 652 F.2d 837, 841 (9th Cir.1981), *cert. denied,* 455 U.S. 1034, 102 S.Ct. 1737, 72 L.Ed.2d 153 (1982)), this does not speak to the issue of what the *purpose* of either the old or new rules concerning at-will employment are. The purpose of the rule urged by Aetna, that an employee can be fired for any reason or no reason, is to give employers flexibility in their firing decisions. But the public policy set out in *Leikvold* and *Wagenseller* leaves the employer free to terminate an otherwise at-will employee for any reason that does *not* violate public policy, so an employer's legitimate interests are not undermined by the retroactive application of *Wagenseller.* Finally, applying *Leikvold* and *Wagenseller* retroactively would not cause substantial inequity, because the actions which Bernstein complains of have been illegal since the passage of Title VII and the ADEA. Consid-

eration of the three factors in *Chevron Oil* results in a finding that the presumption under Arizona law, that decisions be given retroactive effect, has not been rebutted in this case.

Moreover, Arizona courts have already decided that *Leikvold* and *Wagenseller* be given retroactive effect. Indeed, the Arizona Supreme Court in *Wagenseller* specifically applied *Leikvold*'s grant of a cause of action for breach of an implied employment contract, based on the terms of a personnel manual, to a cause of action which arose five years before *Leikvold* was decided. *Wagenseller*, 147 Ariz. at 382, 710 P.2d at 1037–38. *See also Wagner*, 150 Ariz. at 85, 722 P.2d at 253–54 (applying both *Wagenseller* and *Leikvold* retroactively); *Jeski v. American Express Co.*, 147 Ariz. 19, 708 P.2d 110 (Ct.App.1985) (same).

The court below apparently substituted its own analysis of the issue of retroactivity for that of the Arizona courts. This ground for the district court's grant of summary judgment on counts 3, 4, and 5 was, therefore, error.

### D. *ACRA Preemption of Bernstein's Wrongful Discharge Count.*

The district court also ruled that the Arizona Civil Rights Act preempts Bernstein's wrongful discharge count. To decide this issue, we must determine what the Arizona Supreme Court would rule. *See American Triticale, Inc. v. Nytco Serv., Inc.*, 664 F.2d 1136, 1141, 1143 (9th Cir. 1981) (noting that a decision of a state's intermediate court of appeals may also be followed). Regrettably, no decision of the Arizona Supreme Court or Court of Appeals has addressed the issue of whether the ACRA preempts common law tort claims. Both Aetna and Bernstein have provided citations of Arizona trial court minute decisions which support both sides of the proposition. *See Griffin v. Syntex Corp.*, Maricopa County Superior Court, No. C–565266 (June 23, 1986); *Winnicki v. Green Valley Realty Co.*, Coconino County Superior Court, No. 38521 (May 30, 1985) (both supporting nonpreemption); *Bernar-*

do v. Lamco II, Inc.*, Maricopa County Superior Court, No. C–559064 (Jan. 13, 1986); *Paulsell v. Arizona Safety Ass'n*, Maricopa County Superior Court, No. C–551977 (Oct. 22, 1985) (ruling for preemption). Since there is hardly any consistency in jurisprudence among Arizona trial courts on this issue, their decisions provide little assistance. Moreover, minute entries of state trial courts have been given very little credence in this circuit. *MGM Grand Hotel, Inc. v. Imperial Glass Co.*, 533 F.2d 486, 489 n. 5 (9th Cir.) (while adopting conclusion of a Nevada trial court unpublished opinion, held that it was not bound by it), *cert. denied*, 429 U.S. 887, 97 S.Ct. 239, 50 L.Ed.2d 168 (1976).

Bernstein argues, however, that the Arizona Supreme Court's recent decision in *Ford v. Revlon, Inc.*, 153 Ariz. 38, 734 P.2d 580 (1987), stands for the proposition that the ACRA does not preempt other remedies for employment discrimination under Arizona law. Bernstein's reliance is misplaced. In that case, the plaintiff did not bring a claim under the ACRA, and, therefore, the exclusivity of ACRA remedies was not raised as an issue by Revlon nor was it addressed by the Arizona Supreme Court. What the court *did* rule was that the plaintiff was free to file a tort claim in state court in addition to her Title VII action in federal court. *Id.* at 44 n. 1, 734 P.2d at 586 n. 1. This ruling does not, on its face, stand for Bernstein's proposition.

The ruling in *Ford*, that it is permissible to bring an action in both state and federal courts based upon two separate and distinct causes of action does, however, have some bearing on this issue. Arizona courts have ruled that the ACRA is "substantially identical" with federal legislation, that the "Arizona legislature intended to accomplish the same objectives" and that federal precedent under Title VII is "instructive and apposite." *Civil Rights Div. v. Superior Court*, 146 Ariz. 419, 424, 706 P.2d 745, 750 (Ct.App.1985).

It is well-established that Title VII does not preempt state common law remedies. *See Cancellier v. Federated Dep't Stores*, 672 F.2d 1312, 1318 (9th Cir.)

("The ADEA does not preempt the award of tort damages on pendent state claims."), *cert. denied*, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982); *See Kelly v. American Standard, Inc.*, 640 F.2d 974, 983 (9th Cir. 1981); *see also* 42 U.S.C. § 2000e–7 (1982) (specific non-preemption clause for Title VII actions). The court in *Cancellier* noted that remedies under the ADEA are strictly limited, and that punitive and emotional distress damages are unavailable. *Cancellier*, 672 F.2d at 1318. It is necessary, therefore, to examine both the rights created under the ACRA and the exclusivity of its remedies, to determine whether there is preemption under this analogy to federal law or under Arizona's own rules for preemption. *See Register v. Coleman*, 130 Ariz. 9, 633 P.2d 418 (1981); *Valley Drive–In Theatre Corp. v. Superior Court*, 79 Ariz. 396, 400, 291 P.2d 213, 215 (1955) ("[W]hen a statute creates a right and also provides a complete and valid remedy for the right created, the remedy thereby given is exclusive."); *Mosher v. Conway*, 45 Ariz. 463, 473, 46 P.2d 110, 114 (1935) (preemption where it is "clearly indicated [that there is a] single complete and adequate remedy."); *National Sur. Co. v. Conway*, 43 Ariz. 480, 487, 33 P.2d 276, 278 (1933) ("where statutory right is given, with statutory remedy provided to enforce that right, the parties to whom the right is given are limited to the remedy provided by statute").

Bernstein argues that the ACRA did not create the rights which he relies on for this action. After all, Title VII, the ADEA and the Civil War–Era Civil Rights Acts, 42 U.S.C. §§ 1981, 1983, 1985 (1982), all predated the enactment of the ACRA. Aetna responds that prior to the ACRA there were absolutely no rights or remedies under Arizona law regarding age or religious discrimination in employment. But the rule of preemption does not seem to discriminate between remedies available under state law and those offered by federal law. Moreover, the clear ruling of the Arizona Supreme Court in *Ford* is that neither Title VII nor the ADEA preempts state common law causes of action. 153 Ariz. at 44 n. 1, 734 P.2d at 586 n. 1. The

implication in *Ford*, therefore, is that the ACRA did not create the right upon which Bernstein is claiming. Any other reading of *Ford* would mean that the Arizona Supreme Court was encouraging parties to simply ignore the ACRA and to proceed simultaneously under both the federal laws and state tort remedies. We find that the ACRA did not create the right upon which Bernstein depends and that his tort claim is not preempted, irrespective of the exclusivity of the remedies provided in the ACRA.

**E. Summary Judgment on the Breach of Contract Claim.**

Count 4 of Bernstein's complaint alleged *two* forms of breach of employment contract. The first ground argued by Bernstein was that Aetna's personnel policies were an implied-in-fact contract term. The second ground was that the contract included an implied-in-law covenant of good faith and fair dealing. The district court was correct in dismissing the second ground for this count, but erred in discounting the first theory.

█ The Arizona Supreme Court itself in *Wagenseller*, 147 Ariz. at 383–86, 710 P.2d at 1038–41, ruled that the implied-in-law covenant of good faith and fair dealing only protects "an employee from a discharge based on an employer's desire to avoid the payment of benefits already earned by the employee ..." *Id.* at 385, 710 P.2d at 1040. Bernstein did not claim that any benefits accruing to him were denied. Therefore, this aspect of his action for breach-of-contract claim was properly dismissed.

█ Bernstein's breach-of-contract claim is also premised on Aetna's implied-in-fact personnel policies and this theory is more firmly grounded. Nevertheless, the district court ruled that

> Bernstein's reliance on the personnel manual is insufficient to bring him within *Wagenseller*. The mere fact that the manual existed standing alone with no evidence of representations by Aetna management to Bernstein regarding its contents, no reliance by Bernstein, and

no evidence that the manual was used in the Fischer agency did not create an implied contract arising from the manual. But "[w]hether any particular personnel manual modifies any particular employment-at-will relationship and becomes part of the particular employment contract is a question of fact." *Leikvold,* 141 Ariz. at 548, 688 P.2d at 174 (*reversing* summary judgment on this ground).

The district court's judgment on this issue was error. First, the court placed too much emphasis on the factual issue of Bernstein's reliance on the personnel policies. In *Wagenseller,* the Arizona Supreme Court said that "*Leikvold* does not require a plaintiff employee to show reliance in fact." 147 Ariz. at 383, 710 P.2d at 1038. "The employer's course of conduct and oral representations regarding the policy, as well as the words of the policy itself, also may provide evidence of such a modification." *Id.; Leikvold,* 141 Ariz. at 548, 688 P.2d at 174. The district court did touch on these other factors, in its one-sentence consideration, but these other factors are in factual dispute. Bernstein indeed claims that representations were made to him concerning lifetime employment with Aetna. Bernstein claims that he had knowledge of Aetna's personnel policies. Aetna's personnel policies raise an implication of implied-in-fact modifications to employment-at-will conditions. Since a genuine issue of material fact remains, summary judgment on this issue was unjustified.

Aetna has argued that an implied-in-fact contract of the sort that Bernstein claims is barred by Arizona's Statute of Frauds, Ariz.Rev.Stat.Ann. § 44–101(5) (1987). Aetna's argument is suspect. Aetna offers no precedent for Arizona's barring of an implied-in-fact contract by the Statute of Frauds. In California, the jurisdiction upon which Aetna relied, the case cited, *Newfield v. Insurance Co. of the West,* 156 Cal.App.3d 440, 446–47, 203 Cal.Rptr. 9, 13 (1984), has been contradicted by other California authority. *Steward v. Mercy Hosp.,* 188 Cal.App.3d 1290, 1295–96, 233 Cal.Rptr. 881, 884 (1987); *see also Eisenberg v. Insurance Co. of N. Am.,* 815 F.2d 1285, 1291

(9th Cir.1987) (specifically rejecting the ruling in *Newfield.*).

Aetna has also suggested that even if an implied-in-fact contract were found to exist between Bernstein and Aetna, Aetna did not breach that contract. In short, Aetna alleges it followed its personnel procedures in firing Bernstein. This is also a question of fact. Moreover, the court below did not rule on this basis. It simply held that no implied contract arose from the manual. We reverse the district court's ruling of summary judgment on that part of Bernstein's breach-of-contract claim premised on Aetna's personnel policies.

### F. Summary Judgment on Tortious Interference Claim.

The Arizona Supreme Court in *Wagenseller* clarified the elements of the tortious interference with an employment contract claim. 147 Ariz. at 386–88, 710 P.2d at 1041–42. These elements are:

(1) The existence of a valid contractual relationship or business expectancy;

(2) knowledge of the relationship or expectancy on the part of the interferer;

(3) intentional interference inducing or causing a breach or termination of the relationship or expectancy;

(4) resultant damage to the party whose relationship or expectancy has been disrupted;

(5) "improper" interference as defined in the *Restatement (Second) of Torts* § 766 (1979).

*Antwerp Diamond Exch. v. Better Business Bureau of Maricopa County,* 130 Ariz. 523, 530, 637 P.2d 733, 739–40 (1981) (for the first four elements); *Wagenseller,* 147 Ariz. at 388, 710 P.2d at 1042–43 (for the last element).

The court below based its summary judgment on Bernstein's count 5 on his failure to show a valid contractual relationship or business expectancy. Because the court ruled as to count 4 that Bernstein did not have an implied-in-fact contract with Aetna, there could be no action for tortious interference. Disposition on this issue, therefore, is controlled by our decision above. Since we reverse the district court's deci-

sion that Bernstein did not have an implied contract with Aetna, we must reverse on this issue as well.

■ Aetna has argued that Fischer was a supervisor acting within the scope of his authority as an agent of Aetna, and that, therefore, Bernstein cannot claim interference because Aetna cannot be guilty of inducing a breach of its own alleged contract. This argument is meritless. It was specifically rejected in *Wagenseller.* 147 Ariz. at 386–87, 710 P.2d at 1041–42. The issue that the *Wagenseller* court emphasized is whether the interfering party's action was "improper." On this point, Aetna has suggested that if (1) Fischer is dismissed from the age and religious discrimination claims because he was not named in the administrative charge, and (2) the ACRA does indeed preempt Bernstein's common law claims, then Fischer's actions could not possibly be characterized as improper. Our ruling that the ACRA did *not* preempt Bernstein's claims, and that Fischer should not be dismissed from the discrimination actions, leaves an issue of material fact on Bernstein's claim of tortious interference. We reverse the district court's summary judgment on this issue as well.

### G. *Attorneys' Fees.*

Both Bernstein and Aetna have indicated that they will seek attorneys' fees if they prevail on this appeal. Given the current posture of this case, on appeal from summary judgment, attorneys' fees are denied at this time.

CONCLUSION

The decision of the district court is, therefore, REVERSED AND REMANDED.