NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MESA AIRLINES, INC., *Plaintiff/Appellee*,

*v.*

PAUL CONDRON, *Defendant/Appellant*.

No. 1 CA-CV 16-0326
FILED 10-17-2017

Appeal from the Superior Court in Maricopa County
No. CV2015-005341
The Honorable Douglas Gerlach, Judge

**AFFIRMED**

COUNSEL

Polsinelli PC, Phoenix
By Eric E. Lynch, Craig M. Waugh
*Co-Counsel for Plaintiff/Appellee*

Ford & Harrison LLP, Washington, DC
By Dannie B. Fogleman, appearing *pro hac vice*
*Co-Counsel for Plaintiff/Appellee*

Baird, Williams & Greer, LLP, Phoenix
By Daryl M. Williams
*Counsel for Defendant/Appellant*

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Diane M. Johnsen and Judge Maria Elena Cruz joined.

**W I N T H R O P**, Presiding Judge:

¶1         Paul Condron ("Condron"), a pilot, appeals the superior court's summary judgment in favor of Mesa Airlines, Inc. ("Mesa Airlines"). Condron argues the superior court erred in finding the Jet Training Event Promissory Note ("the Note") that Condron signed was an enforceable, stand-alone contract and did not impermissibly modify his oral employment agreement. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2         On September 4, 2014, Mesa Airlines hired Condron as a prospective EMB 175 First Officer, with the understanding that he would be part of a crew that would fly the Embraer 175 aircraft. Mesa Airlines requires all employees who operate an EMB 175 aircraft be trained in accordance with its Federal Aviation Administration ("FAA") approved training program. At the time of his hire, Condron did not have the requisite FAA rating; accordingly, Mesa Airlines offered Condron the training necessary to comply with company policy and to qualify for the FAA rating.

¶3         Previously, Mesa Airlines and The Air Line Pilots Association, of which Condron is a member, entered a Collective Bargaining Agreement ("CBA"). Pursuant to the CBA, Mesa Airlines may require pilots with less than four years' longevity to "execute training agreements as a condition for entering into initial, upgrade or transition training." Mesa Airlines offers such pilots the required training in exchange for execution of a promissory note to be paid: in full upon demand, by completion of twelve months' employment, or by a combination of the two. Thus, the CBA expressly allows Mesa Airlines to require new and/or less experienced pilots to reimburse Mesa Airlines for the cost of such training by signing the Note in a set amount. The CBA also provides that the balance owed "will be subject to straight line amortization beginning from the date of successful completion of the check ride," declining to zero at the end of

twelve months, and reduced by half if a pilot gives forty-five days' notice of his resignation.

¶4            As relevant here, the CBA sets the amount owed for the training provided to Condron at $11,470.00 and requires the amount to increase annually with the Consumer Price Index.[1]  Consistent with the amortization provision of the CBA, the Note further provides that Condron receive "credit against the principal amount of the Note based on the length of [his] service" with Mesa Airlines.  The Note expressly states it is "not intended to, and shall not be construed to, constitute a contract of employment for a definite period of time or otherwise alter [Condron's] at-will employment status with Mesa Airlines."  The Note also grants Mesa Airlines the power to offset the unpaid balance on the Note from "any compensation owed to [Condron]" if he voluntarily leaves Mesa Airlines.

¶5            Condron signed the Note on September 3, 2014.  After signing the Note, Condron was officially hired, completed the training, and eventually flew as a first officer under the supervision of a line check airman.  He resigned after flying only twelve hours for Mesa Airlines.[2]

¶6            Mesa Airlines deducted $764.08 from Condron's final paycheck, pursuant to the Note's terms, and demanded Condron pay the remaining balance on the Note.  Condron did not comply with the demand, and Mesa Airlines sued Condron for breach of contract.  The parties filed cross motions for summary judgment.

¶7            Following oral argument, the superior court found the Note was a "stand-alone promissory note without any accompanying employment agreement."  The court considered, but expressly rejected, Condron's argument that the Note's principal amount was similar to a liquidated damages provision and operated as an unenforceable penalty.  Accordingly, the court denied Condron's motion and granted summary judgment in favor of Mesa Airlines.

¶8            Condron moved for reconsideration, and argued that, contrary to the superior court's finding, the note was "part and parcel of the

---

[1]        Based on that adjustment, the face value of Condron's Note was $12,712.00.  According to Mesa Airlines, the amount of the Note is significantly less than the actual cost of providing the training.

[2]        Condron notified Mesa Airlines on December 5, 2014, that he had accepted other employment and was resigning effective December 19, 2014.

employment agreement Mesa Airlines had with Condron." Condron additionally argued the Note cannot be considered a stand-alone agreement because it was entered contemporaneously with his employment agreement and because it included Arizona statutory terms.

¶9 The superior court denied Condron's motion for reconsideration, and in doing so, noted the case was "a freedom of contract case," and that no statute prohibited Mesa Airlines from charging Condron for the expense of providing the requisite training. The court further found in the alternative that even if one erroneously assumed that "the promissory note impaired Condron's right to terminate an at-will employment arrangement . . . that is a result to which he voluntarily assented, and it is well-understood that statutory, indeed even constitutional rights designed for an individual's protection can be waived." The court awarded costs and attorneys' fees to Mesa Airlines in its final judgment.

¶10 Condron timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2016) and 12-2101(A)(1) (2016).

**ANALYSIS**

*I. Standard of Review*

¶11 Summary judgment is proper if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990). We review the grant of summary judgment *de novo*, and view the evidence in the light most favorable to the party opposing the motion. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, 482, ¶ 13 (2002). Rulings regarding contract interpretation are matters of law, which we review *de novo*. *Miller v. Hehlen*, 209 Ariz. 462, 465, ¶ 5 (App. 2005).

¶12 On appeal, Condron argues that: (1) the Note was a part of his employment contract; (2) the Note is void as contrary to public policy; (3) the Note is void because it is a penalty; and (4) Mesa Airlines was not authorized to withhold his wages to reduce the unpaid balance of the Note. These arguments largely stem from the same incorrect premise—that the Note is integrated in and impermissibly modifies the parties' oral employment contract. Condron's arguments are thus best addressed in the context of determining whether the Note and employment agreement are separate contracts.

### II.     The Note as a Separate Contract

**¶13**        The essential question of contract formation is whether the parties manifest assent or intent to be bound to the contract.  *Schade v. Diethrich*, 158 Ariz. 1, 9 (1988).  Generally, the fact finder determines the intent of the parties. *Tabler v. Indus. Comm'n*, 202 Ariz. 518, 521, ¶ 12 (App. 2002).  Additionally, for a court to determine that parties entered a contract, there must be evidence of an offer, acceptance, and consideration. *Id.* at 520, ¶ 8.

**¶14**        The Note constitutes a separate contract from the employment agreement.  As noted above, the CBA explicitly authorized Mesa Airlines to charge a pilot for required training and contemplated that the pilot would be allowed to pay for the training by executing a promissory note.  Condron and Mesa Airlines did, in fact, enter such an agreement, as reflected by the Note.  The Note recites Condron's promise to pay $12,712.00 in consideration of "value received," meaning the flight training Mesa Airlines provided him.  Under the CBA, and as it relates to Mesa Airlines, the amount due on such a note declines on a straight line to zero after the pilot completes twelve months' employment with Mesa Airlines.  Mesa Airlines offered Condron the training, and Condron accepted the offer, before beginning his employment.  All the terms necessary for an enforceable contract are present.  The Note was not integrated into nor conditioned in any respect on the concurrent separate oral at-will employment agreement.  To the contrary, the Note expressly recited it was not intended to, and did not serve to, alter the terms of any at-will employment agreement with Mesa Airlines.  Mesa Airlines fulfilled its contractual obligation by providing the requisite training; however, Condron did not fulfill his promise to pay.

### II.     Whether the Note Modifies Condron's At-Will Employment Status

**¶15**        Condron argues the Note impermissibly modified the at-will employment relationship.  In his view, the Note effectively required him to work for Mesa Airlines for twelve months, until he paid off the principal amount, and penalized him if he terminated employment before then.  The record does not support Condron's argument of a modification; however,

even assuming the Note modified the employment agreement, it was permissible under Arizona law.[3]

**¶16**        Employment agreements are contractual in nature; thus, parties "are free to create a different relationship beyond one at will." *Demasse v. ITT Corp.*, 194 Ariz. 500, 505, ¶ 12 (1999). Although employment "contracts without express terms are presumptively at will," this presumption may be overcome "by establishing a contract term that is either expressed or inferred from the words or conduct of the parties."[4] *Id.* at 505, ¶ 13. The burden of proof for establishing a contract modification is on the party claiming a modification. *Alexander v. O'Neil*, 77 Ariz. 91, 98 (1954) (recognizing the "settled rule" that "the burden of proving an express or implied contract is upon the party asserting it." (citation omitted)); *Thermo-Kinetic Corp. v. Allen*, 16 Ariz. App. 341, 345 (1972). Thus, Condron has the burden of establishing that the Note modified his at-will employment agreement with Mesa Airlines.

**¶17**        This court has previously held that whether a separate provision becomes "part of the employment contract is a question of fact." *Jeski v. Am. Express Co.*, 147 Ariz. 19, 21 (App. 1985). For instance, provisions in personnel manuals generally do not affect the employment relationship if the manual "clearly and conspicuously tells [the] employees that the manual is not part of the employment contract." *Id.* (quoting *Leikvold v. Valley View Cmty. Hosp.*, 141 Ariz. 544, 548 (1984)); *see also Hart v. Seven Resorts Inc.*, 190 Ariz. 272, 278 (App. 1997) (stating that a personnel manual will not turn an at-will relationship into a relationship for a definite term if the employer includes clear and conspicuous language that informs employees their positions are terminable at-will). To forestall summary judgment, however, a party must offer evidence sufficient to create a genuine issue of fact.

**¶18**        Here, the operative language of the Note—as consented to by Condron—is clear and conspicuous. The Note states it "is not intended to, and shall not be construed to, constitute a contract of employment for a

---

[3]        To the extent Condron argues any modification of an at-will employment agreement violates public policy, this argument, as more fully discussed below, is without merit. *See* A.R.S. § 23-1501(A)(2).

[4]        This presumption may be overcome by establishing provisions that, for example, offer an employee job security, set the duration of employment, or limit the reasons for which an employee can be fired. *Demasse*, 194 Ariz. at 505, ¶ 13.

definite period of time or otherwise alter Pilot's at-will employment status with Mesa Airlines."   Moreover, the Note did not establish, let alone expand, any grounds upon which Mesa Airlines could fire Condron, nor did it give Condron any assurances that he would be employed for a set time period.   It also did not limit Condron's own option, as an at-will employee, to voluntarily terminate his employment with Mesa Airlines. Correspondingly, the Note gave Condron three options to repay the Note. Condron could pay the Note in full on demand; could work for Mesa Airlines for at least twelve months and have the training fees completely forgiven; or could work for Mesa Airlines for less than twelve months and pay the remaining balance due on the Note based on the length of time he worked.   Regardless of which option he chose, Condron always possessed the legal right of an at-will employee to quit his job at any time.   The only effect of Condron's decision to voluntarily end employment before a year's time was that he would forfeit the right to have the debt forgiven over time. Even assuming the Note somehow restricted Condron's ability to unilaterally terminate the employment, the very statute Condron relies on—A.R.S. § 23-1501(A)(2)—expressly allows for such an agreement, if that agreement is in writing, signed by the party to be charged and/or is authorized by a collective bargaining agreement.   All of the required conditions exist here.

> IV.    *Whether the Note Constitutes a Penalty and Thereby Violates Public Policy*

¶19        Condron argues the Note violates public policy because it creates a penalty for quitting.  This argument is not supported by the record or by applicable law.

¶20        Condron relies on *Med+Plus Neck & Back Center v. Noffsinger* (*Med+Plus*), to support his contention that the Note operates as an unenforceable penalty.  311 Ill. App. Ct. 3d 853 (2000).[5]  In *Med+Plus*, the court found an early termination clause in the written employment agreement operated as a liquidated damages provision because it required the employee to pay a sum certain if he ended his employment before completing his two-year contract.  311 Ill. App. Ct. at 860.  The court found

---

[5]       Illinois law presumes that "an employment relationship of indefinite duration is terminable 'at will' by either party with or without cause." *Chesnick v. Saint Mary of Nazareth Hosp.*, 211 Ill. App. Ct. 3d 593, 547 (1991). This presumption, however, may be overcome by demonstrating that the parties contracted to the contrary.  *Id.*

the provision was unenforceable because it bore no relation to the employer's training costs and because the testimony demonstrated that the employee was hired because of his experience, received very little training, and immediately saw patients upon starting work. *Id.* at 856, 860.[6]

¶21 Unlike the plaintiff in that case, who was already qualified for the job when he was hired, Condron was required to undergo training in order to fly the aircraft for which he was hired.

¶22 Mesa Airlines argues the Note should be construed as a means to secure reimbursement of its reasonable training costs and not as a penalty. In support of this argument, Mesa Airlines relies on three cases that required former employees to repay training costs. *See Gordon v. City of Oakland*, 627 F.3d 1092, 1096 (9th Cir. 2010) (finding employer could collect training costs if an employee resigned before five years' service, so long as employer paid the employee a minimum wage)[7]; *Heder v. City of Two Rivers*, 295 F.3d 777, 781-82 (7th Cir. 2002) (finding employer had a right to be reimbursed for training costs associated with training employees who left within three years of training, so long as reimbursement did not affect the statutory floor for wage requirements); *Pittard v. Great Lakes Aviation*, 156 P.3d 964, 974 (Wyo. 2007) (upholding a training agreement requiring a pilot to repay the airline his training costs plus interest if he left employment before working fifteen months.).[8]

¶23 The requirement that Condron repay Mesa Airlines for training costs was not a penalty for ending his at-will employment. Rather, Condron agreed to repay Mesa Airlines for his training when he began his

---

[6] Condron additionally relies on *Dobson Bay Club II DD, LLC v. La Sonrisa de Siena, LLC* (*Dobson Bay*), to support his argument that the Note violates public policy because it operates as a penalty. 242 Ariz. 108 (2017). However, *Dobson Bay* examines the enforceability of a liquidated damages provision that did not reasonably relate to actual or anticipated damages. It does not govern whether, in this business setting, a separately executed promissory note is enforceable.

[7] Under California law, there is a presumption in favor of at-will employment. *See Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 336 (Cal. 2000).

[8] Under Wyoming law, if a contract for employment is for an indefinite period it is presumed to create an at-will employment relationship. *Brodie v. Gen. Chem. Corp.*, 934 P.2d 1263, 1265 (Wyo. 1997).

employment, and his remaining obligation on the Note was merely a consequence of his decision to leave the job before the balance of the Note declined to zero. His subsequent refusal to honor his contractual promise to pay the Note's balance resulted in a breach, triggering liability for the remaining amount due on the Note.

      *V.     Whether Mesa Airlines had the Power to Withhold Amounts Due Under the Note from Condron's Wages*

**¶24** Condron argues that Mesa Airlines "had no right to deduct wages from [his] final paycheck . . . because the note was and is void." Condron cites A.R.S. § 23-352 to support his contention; however, an exception to that general principle, as provided in subsection (2) of the same statute, is that an employer may withhold an employee's wages if it has "prior written authorization from the employee." A.R.S. § 23-352(2) (2012).

**¶25** Condron gave Mesa Airlines prior written authorization to withhold his wages when he signed the Note, which provided that "Mesa Airlines has the right to offset the unpaid balance of this Note against any compensation owed to Pilot in the event Pilot voluntarily leaves employment with Mesa Airlines prior to the expiration of twelve (12) months from the date of successful completion of Mesa Airlines' Pilot Training Program." Accordingly, Mesa Airlines did not breach A.R.S. § 23-352 in withholding his wages.[9]

      *VI.    Attorneys' Fees*

**¶26** Condron and Mesa Airlines both request attorneys' fees on appeal pursuant to A.R.S. § 12-341.01 (2016). Mesa Airlines additionally requests attorneys' fees pursuant to the Note's provisions.[10] Mesa Airlines is the prevailing party on appeal. Accordingly, Condron's request is denied, and Mesa Airlines is awarded its taxable costs and reasonable attorneys' fees, to be determined upon compliance with Rule 21, ARCAP.

---

[9] Condron did not file a counterclaim for unpaid wages at the superior court, and is not entitled to treble damages pursuant to A.R.S. § 23-355 (2012).

[10] The Note provides that the endorser "agree[s] to pay, in addition to all other sums due hereunder, all costs and expenses of collection of this Note and/or enforcement of the same including reasonable attorney's fees."

**CONCLUSION**

¶27 The superior court's summary judgment in favor of Mesa Airlines is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA